## COMSTOCK *v.* GENERAL MOTORS CORPORATION.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

   The Supreme Court reviews evidence received below in the light favorable to the plaintiff in which the jury would have had a right to view it on the appeal from grant or denial of defendant's motion for a directed verdict.

2. AUTOMOBILES — NEGLIGENCE — POWER BRAKES — GARAGE — PROXIMATE CAUSE.

   Action of assistant service manager of automobile garage at which car had been brought in because power brakes failed to function in starting to drive, instead of push, car into service stall and injured plaintiff fellow employee *held,* potentially a proximate cause of plaintiff's injury.

3. SAME—DEFECTIVE BRAKES—DANGEROUS INSTRUMENTALITY.

   An automobile with defective brakes, legally speaking, is a dangerous instrumentality.

4. SAME—NEGLIGENCE—MANUFACTURERS—PRIVITY OF CONTRACT.

   Generally, an automobile manufacturer is liable for negligence in manufacture or inspection of parts of an automobile directly related to its safe operation even if the defective part was supplied by others and the injured party was not in privity of contract.

5. NEGLIGENCE—INFERENCES.

   A finding of negligence may be based upon reasonable inferences arising from the proven facts.

REFERENCES FOR POINTS IN HEADNOTES

[1]  3 Am Jur, Appeal and Error § 886.
[2]  5A Am Jur, Automobiles and Highway Traffic § 236.
[2, 8, 9, 10]  5A Am Jur, Automobiles and Highway Traffic § 240.
[3]  5A Am Jur, Automobiles and Highway Traffic § 194.
[3, 4, 6, 7, 11]  5A Am Jur, Automobiles and Highway Traffic § 661.
[5]  5A Am Jur, Automobiles and Highway Traffic § 1013.
[12]  5A Am Jur, Automobiles and Highway Traffic § 238.
[13]  5A Am Jur, Automobiles and Highway Traffic § 1029.
[14]  5A Am Jur, Automobiles and Highway Traffic § 1028.

6. Same—Automobiles—Manufacturer—Foreseeable Danger.

Liability for negligence in the manufacture of an automobile is imposed upon the manufacturer, where he puts it on the market to be used without inspection by his customers and the danger from the negligence is foreseeable.

7. Same—Automobile Manufacturer—Warning of Known Dangers.

Evidence presented in automobile dealer's service garage employee's action against defendants, including automobile manufacturer, for injuries sustained by reason of failure of power brakes to function *held,* sufficient to allow the jury to infer negligence on the part of the manufacturer, where it appears such defendant had been fully aware of the defective power brakes before the incident here involved and had given warning to its dealers to replace such brakes at company expense but did not take all reasonable means to convey effective warning to purchasers of the cars when the latent defect was discovered notwithstanding a manufacturer has a duty to warn of known danger inherent in a product or in its contemplated use.

8. Same—Intervening Act.

Generally, the effect of an intervening negligent act is tested by determining whether or not it was such as might reasonably have been foreseen as a consequence of the claimed negligence of the original actor.

9. Same—Intervening Act—Continuance of Prior Negligence.

An act of negligence which is a substantial factor in bringing about an injury does not cease to be a legal and proximate cause thereof because of the intervention of a subsequent act of negligence of another which contributed to the injury, if the prior act of negligence is still operating, and the injury inflicted is not different in kind from that which would have resulted from the prior act.

10. Same—Intervening Act—Foreseeability of Injury.

The intervening negligence of a subsequent actor does not legally insulate the prior actor from liability for his prior negligence, where such is a substantial factor in bringing about injury for which recovery is sought, if the prior actor should have realized that a third party might subsequently so act and a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted.

11. SAME—AUTOMOBILES—DEFECTIVE BRAKES—FORESEEABLE DANGER.
  Automobile manufacturer's failure to warn purchasers of cars
    it had sold with defective brakes constituted evidence of negli-
    gent conduct for consideration of jury in action by employee
    in its dealer's service garage for injuries sustained when dealer's
    assistant service manager drove, instead of pushed, car into
    service stall, where it appears the manufacturer then knew
    that large numbers of its cars had defective brakes and negli-
    gent action of the other employee was reasonably foreseeable,
    it not being required that there be precision in foreseeing the
    exact hazard or consequence which happens.

12. SAME—PROXIMATE CAUSE.
  There may be more than 1 proximate cause concurring to oc-
    casion an injury.

13. SAME—PROXIMATE CAUSE—QUESTION FOR JURY.
  Generally, the question of proximate cause is held to be one for
    the jury.

14. AUTOMOBILES—DEFECTIVE BRAKES—NEGLIGENCE OF MANUFAC-
  TURER—QUESTION FOR JURY.
  Automobile dealer's service garage employee who was injured
    when car produced by defendant manufacturer was left at
    garage because brakes had failed to function and was being
    put into service stall by dealer's assistant service manager
    *held,* entitled to have plaintiff's claims of continuing negligence
    and proximate causation on the part of defendant manufacturer
    submitted to jury as questions of fact.

Appeal from Wayne; Murphy (Thomas J.), J.
Submitted April 7, 1959. (Docket No. 10, Calendar
No. 47,447.) Decided November 25, 1959.

Case by Robert Comstock and Zurich Insurance
Company, a foreign corporation, against General
Motors Corporation, a foreign corporation, Leon
Friend and Clifford Wentworth for personal injuries
and compensation paid because of personal injuries
sustained in service garage when struck by automo-
bile with defective brakes. Dismissed as to defendant
Wentworth. Verdict and judgment for defendant
Friend. Directed verdict and judgment for de-

fendant General Motors Corporation. Plaintiff appeals and continues as to General Motors Corporation only. Reversed and remanded.

*Dann, Rosenbaum & Bloom* and *Lacey, Jones & Doelle,* for plaintiffs.

*Ward, Plunkett & Cooney* (*W. P. Cooney,* of counsel), for defendant General Motors Corporation.

EDWARDS, J. This is another appeal wherein a plaintiff seeks reversal because he has been denied the opportunity for jury trial and verdict on a claim of negligent injury. In this instance the trial judge thought there was evidence of negligence on the part of the defendant concerned. He directed a verdict, however, because he considered that the effect of any negligence on the defendant's part had been terminated by an intervening act of another party.

This action was filed by an injured garage employee against the owner, the driver, and the maker of the Buick automobile which struck him. Plaintiff had previously recovered workmen's compensation as a result of his employment and the insurance carrier, Zurich Insurance Company, is subrogated to the extent of the compensation previously paid.

On motion, the suit was dismissed as to the driver of the automobile because he was an employee of the same garage which employed plaintiff. CLS 1956, § 413.15 (Stat Ann 1957 Cum Supp § 17.189).

The suit was tried in the Wayne county circuit court and a jury verdict of no cause for action was entered as to the owner of the automobile. No appeal is before us as to these 2 defendants.

Before the submission of the case to the jury, defendant General Motors Corporation, manufacturer of the automobile, moved for a directed verdict. The trial judge granted the motion, holding that an in-

tervening act of negligence (that of the driver) had as a matter of law severed any causal relationship between plaintiff's injury and any possible negligence on the part of defendant General Motors Corporation.

Plaintiff appeals from this decision. In considering an appeal from grant or denial of defendant's motion for a directed verdict, we view the evidence received below in the light favorable to the plaintiff in which the jury would have had a right to view it. *Ware* v. *Nelson,* 351 Mich 390; *Cabana* v. *City of Hart,* 327 Mich 287 (19 ALR2d 333).

Plaintiff and appellant Robert Comstock was employed by Ed Lawless Buick Company as a mechanic. While at work on January 18, 1954, he received serious injuries to his right leg. The leg ultimately had to be amputated.

The automobile which struck him was a 1953 Buick Roadmaster equipped with power brakes, owned by Leon Friend. It had been purchased in the spring of 1953 and had been driven 6,000 miles. It was being driven at the time of the accident by Clifford Wentworth, the assistant service manager of Lawless Buick. The accident happened when Wentworth forgot that the power brakes on the Buick in question were not working.

Leon Friend testified that he had first discovered that the brakes on his automobile were not operating on January 17, 1954. The next morning (a Monday) he called Lawless Buick which had sold him the car and talked to Clifford Wentworth who told him that he should bring the car in—that they knew what was wrong.

Leon Friend drove the automobile to the garage, with his wife preceding him in another car. He used the emergency brake and employed the car ahead as a bumper.

On arriving at the garage he brought the car to a

stop inside the garage service door. He talked to Wentworth about the brakes and about some other work he wanted done. Wentworth wrote up a service order. Friend asked whether he should leave the car where it was and Wentworth said to do so.

A few minutes later while Friend was still in the building, Wentworth got into the Buick in question and sought to drive it out of the way into a service stall. He testified that it was a busy morning and that he completely forgot that Friend's Buick had no brakes until he applied them as the car was moving in the direction of another employee, Robert Comstock, who was putting a name plate on the rear of another automobile. The brake pedal went down to the floor board without affecting the progress of the automobile. Although, Wentworth testified, he attempted to apply the emergency brake, the Buick struck Comstock, crushing his right leg against the bumper of the car on which he was working.

Testimony which plaintiff points to as establishing negligence on the part of defendant General Motors includes the following:

Wentworth testified that in the fall of 1952, immediately following introduction of the 1953 Buick automobile, difficulties were experienced with the power brake system on the 1953 Buicks resulting in sudden brake failures. In many of those cases it was discovered that failure of an "O" ring sealer in the hydraulic brake master cylinder allowed the brake fluid to escape from the master cylinder. When this happened, the brake foot pedal could be pressed clear to the floor boards without any brake application resulting.

In this regard, Wentworth testified:

"*Q.* Now, did you find any complaints or anything wrong with the power brake units in the 1953 Buick automobiles?

"*A.* Yes sir.

"*Q.* When did you first discover anything wrong?

"*A.* Shortly after the cars began using power brake systems.

"*Q.* And can you tell us about when these 1953 Buicks with power brakes came out?

"*A.* It would be in the fall. I don't know the exact date.

"*The Court:* Fall of 1952?

"*A.* Yes, I believe so.

"*Q.* And about how soon after that did you begin to find trouble?

"*A.* A matter of weeks, I believe. * * * Loss of fluid and failure of the brakes. * * * The 'O' ring sealer would fail and fluid would be sucked into the engine and burned with the gasoline.

"*Q.* * * * Do I understand correctly in a power brake unit you have a master cylinder with fluid in it?

"*A.* Yes sir.

"*Q.* You have a sort of plunger, is that right?

"*A.* That is right.

"*Q.* You press the brakes, the plunger goes down and puts the fluid under pressure?

"*A.* That is correct. * * *

"*Q.* This fluid is distributed by pipes to the 4 wheels of the car, is that correct?

"*A.* Yes.

"*Q.* And that pressure is distributed to each of the 4 wheels where it operates on each one of the brakes?

"*A.* Yes, sir.

"*Q.* The 'O' ring sealer would be what?

"*A.* A sealer between the vacuum cylinder and master cylinder."

There was corroboration of this testimony from Buick sources.

On November 2, 1953, Buick's service department sent out a bulletin entitled, "Empty power brake reservoirs 1953 power brake equipped Buicks." The

bulletin went to all Buick agencies. It stated in part:

"This trouble has been diagnosed as a poor fit between the base of the hydraulic cylinder casting and the vacuum can. Apparently on some jobs when the 4 bolt holes are formed in the can, there is some distortion of the metal around the holes and then the hydraulic cylinder casting does not pull up flush to the can when the 4 attaching bolts are tightened. This then does not permit equal pressure to the 'O' ring seal between the 2 surfaces and allows vacuum to pull oil from the reservoir pipe past the treads of the retainer holding the seal and primary cup— then into the can up the vacuum pipe and into the engine."

Formidable as this problem sounds, Elmer Krause, Buick's general service manager, testified that it accounted for only "a very few isolated cases." The principal cause of 1953 Buick brake failure was identified by Buick's brake engineer, Charles D. Holton, as failure of the "O" ring sealer in the master brake cylinder. Due to time and cold temperatures and brake fluid exposure, the sealers became "harder" and "changed dimensionally slightly." As a result, the unit was redesigned.

The matter was judged serious enough by General Motors to require the issuance of 2 separate kits for replacement of the defective parts. One kit employed the 1953 master cylinder, and one employed the 1954 master cylinder. These were furnished all Buick agencies for replacement of the defective units without cost to the owners. The general service manager of the Buick division testified that Buick made 7,988 of these kits available to its dealers in the 4th quarter of 1953. He also testified that 44,-126 such kits were produced in the 1st quarter of 1954.

The agencies were instructed to make repairs on the power brake system at General Motors' expense whenever 1953 Buicks came into the shops. These repairs were made without notice to the owners and even if there were no complaints about the brakes. No warning to owners of 1953 Buicks equipped with these power brakes was given either by General Motors, or by the agency which sold this Buick as far as this record reveals.

Wentworth, the Lawless Buick agency service representative, testified on this point:

"*A.* Because I was not allowed a campaign to call these people or mail anything to them.

"*The Court:* They asked you to call them.

"*A.* They said to get these cars whenever you could get your hands on them. When a customer didn't come around I couldn't look up the thing. I thought it was Buick's responsibility. Most of the time on things like that owners were sent registered letters. I was not allowed to do that.

"*The Court:* Who said you couldn't send letters?

"*A.* The service department at Buick. It was a hush thing. They didn't want the public to know the brakes were bad and they were very alarmed."

Mr. Krause, the general service manager of Buick testified somewhat differently:

"*Q.* Mr. Krause, did the Buick Motor Division ever contact the owners of these cars?

"*A.* No, sir.

"*Q.* Didn't advertise what the conditions were?

"*A.* No, sir.

"*Q.* Were any parts ever sent to a dealer as replacement parts unless he asked for them?

"*A.* No, sir.

"*Q.* I take it nothing was done at all by the Buick Motor Company or Buick Division of General Motors unless and until the parts were asked for and then they were given, if possible?

"*A.* The parts were ordered by the dealer and shipped to the dealer by us.

"*Q.* That is all the Buick Company did?

"*A.* Well, other than put out the technical information such as the bulletin you just read there.

"*The Court:* You didn't call them up and say, get all these cars in and have them repaired?

"*A.* No, sir.

"*Q.* Why not?

"*A.* Well, in the first place that is the obligation of the dealer, and in the second place we don't know who all the owners are or where they are.

"*Q.* Did they ever do anything to find out?

"*A.* We have no right to tell the dealer how to run his business. He is an independent business man.

"*Q.* But did you do anything to find out? * * *

"*A.* No. * * *

"*Q.* By the way, Mr. Krause, what do these cars weigh?

"*A.* In the neighborhood of 2 tons.

"*Q.* What speeds are they capable of operating at? * * *

"*A.* Well, I would just estimate 85 to 95 miles an hour. * * * I think our 1953 car,—I am not sure about this, but I think it was around 285 horsepower.

"*Q.* The Roadmaster?

"*A.* That is right.

"*Q.* 285 horsepower will drive that car over 100 miles an hour, won't it?

"*A.* Not necessarily."

The testimony in this case showed that after the accident the brake unit involved was replaced with the replacement unit furnished by General Motors without charge to the owner. The agency owner testified that General Motors was billed for and paid the labor cost involved.

On consideration of the motion for a directed verdict, the trial judge held that the assistant service manager was guilty, as a matter of law, of negligence which was a proximate cause of the plaintiff's in-

jury. With this conclusion, on this record, we agree. Wentworth clearly had notice of the brake failure. He had reason to know the dangerous possibilities, and had a peculiar responsibility as assistant service manager for taking proper precautions. He could have (but did not) put a "No brake" sign on the car. Indeed, his own rules required this to be done. If he had remembered the condition of the car, he could have had it pushed into position.

It would be hard to conclude that Wentworth's forgetfulness in these circumstances was other than negligence. And, certainly, his negligence might be found to be a proximate cause of the injury.

The trial judge, however, also held that the assistant service manager's negligence was a new and independent cause which acted to sever any causal relationship between the claimed negligence of General Motors and the accident. This holding requires further examination of 2 questions: First, is there evidence from which the jury could have found negligence on General Motors' part? And, second, if so, is there evidence from which the jury could have concluded that such negligence was of such a continuous nature as to constitute a proximate cause of this accident?

The trial judge thought the first question should be answered affirmatively. So do we.

The braking system is obviously one of the most crucial safety features of the modern automobile. The greatly increased speed and weight of a modern automobile are factors which must be considered in relation to the care which would be reasonable for a manufacturer to use in designing, fabricating, assembling, and inspecting a power brake. A modern automobile equipped with brakes which fail without notice is as dangerous as a loaded gun. In legal terms, an automobile with defective brakes is clearly

a dangerous instrumentality. *Bogart* v. *Cohen-Anderson Motor Co., Inc.,* 164 Or 233 (98 P2d 720).

See, also, *MacPherson* v. *Buick Motor Co.,* 217 NY 382 (111 NE 1050, LRA1916F, 696, Ann Cas 1916C, 440, 13 NCCA 1029).

Defendant's Buick division did not fabricate the part that failed. The particular component was a product of a supplier, Chicago Rawhide Company, and it had been assembled into the cylinder assembly by another supplier, Kelsey Hayes Wheel Company. Buick division, however, controlled the design and assembled the cylinder into the automobile. Buick tested its performance. It placed the finished product on the public market.

Since *MacPherson* v. *Buick,* many cases have been decided under facts similar to or less compelling than these. The courts have generally held that the ultimate manufacturer is liable for negligence in manufacture or inspection of parts of an automobile directly related to its safe operation even if the defective part was supplied by others and the injured party was not in privity of contract. The cases also hold that a finding of negligence may be based upon reasonable inferences arising from the proven facts. *MacPherson* v. *Buick Motor Co., supra; Alexander* v. *Nash-Kelvinator Corporation* (CCA 2), 261 F2d 187; *Spencer* v. *Madsen* (CCA 10), 142 F2d 820; *Pierce* v. *Ford Motor Co.* (CCA 4), 190 F2d 910.

See, also, *Fentress* v. *Van Etta Motors,* 157 Cal App2d 863 (323 P2d 227); *Markel* v. *Spencer,* 5 App Div 400 (171 NYS2d 770); 2 Restatement, Torts, §§ 394, 395.

The rationale of these cases was set forth thus by Justice Cardozo in *MacPherson:*

"We hold, then, that the principle of *Thomas* v. *Winchester,* 6 NY 397 (57 Am Dec 455), is not limited to poisons, explosives, and things of like nature, to

things which in their normal operation are implements of destruction. If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a ·duty to make it carefully. That is as far as we are required to go for the decision of this case. There must be knowledge of a danger, not merely possible, but probable. It is *possible* to use almost anything in a way that will make it dangerous if defective. That is not enough to charge the manufacturer with a duty independent of his contract. Whether a given thing is dangerous may be sometimes a question for the court and sometimes a question for the jury. There must also be knowledge that in the usual course of events the danger will be shared by others than the buyer. Such knowledge may often be inferred from the nature of the transaction. But it is possible that even knowledge of the danger and of the use will not always be enough. The proximity or remoteness of the relation is a factor to be considered. We are dealing now with the liability of the manufacturer of the finished product, who puts it on the market to be used without inspection by his customers. If he is negligent, where danger is to be foreseen, a liability will follow." *MacPherson* v. *Buick Motor Co., supra,* 389, 390.*

We think that the testimony pertaining to the brake failure and the defects in the 1953 Buick power brake cylinder was sufficient to allow the jury to

---

* Concerning the historic impact of *MacPherson* upon the courts of this nation and of England, note excellent annotation: Manufacturer's liability for negligence causing injury to person or damage to property, of ultimate consumer or user, 164 ALR 569.

infer negligence on the part of defendant General Motors Corporation in this case.

There is, however, in this case other testimony from which the jury could conclude that the manufacturing and testing precautions taken by General Motors' Buick division were reasonable ones under all the circumstances; and that the failure of the "O" ring sealers could not reasonably have been foreseen.

Even if such a conclusion were reached on this record, however, we do not think the question of negligence ends there.   Buick division subsequently learned in fact that they had built thousands of power brakes with a defective part.   The facts pertaining to furnishing of replacement kits and assumption of costs allow no other inference than that defendant had ample warning of a serious problem concerning the 1953 Buick power brakes well before the brakes involved here failed.

Defendant's Buick division warned its dealers.   It did not warn those into whose hands they had placed this dangerous instrument, and whose lives (along with the lives of others) depended upon defective brakes which might fail without notice.

In our view, the facts in this case imposed a duty on defendant to take all reasonable means to convey effective warning to those who had purchased 1953 Buicks with power brakes when the latent defect was discovered.

The duty to warn of known danger inherent in a product, or in its contemplated use, has long been a part of the manufacturer's liability doctrine. *Clement* v. *Crosby & Co.*, 148 Mich 293 (10 LRA NS 588, 12 Ann Cas 265) ; *Gerkin* v. *Brown & Sehler Co.*, 177 Mich 45 (48 LRA NS 224, 4 NCCA 254) ; *Lovejoy* v. *Minneapolis-Moline Power Implement Co.*, 248 Minn 319 (79 NW2d 688) ; *Hopkins* v. *E. I. DuPont De Nemours & Co.* (CCA 3), 199 F2d 930; *Tomao* v.

*DeSanno & Son* (CCA 3), 209 F2d 544; *Haberly* v. *Reardon Company* (Mo), 319 SW2d 859.

See, also, annotation: Duty of manufacturer or seller to warn of latent dangers incident to article as a class, as distinguished from duty with respect to defects in particular article, 86 ALR 947.

In the *Gerkin Case,* this Court said (p 60):

"When the fact is once established and demonstrated by experience that a certain commodity, apparently harmless, contains concealed dangers, and when distributed to the public through the channels of trade and used for the purposes for which it was made and sold, is sure to cause suffering to, and injure the health of, some innocent purchaser, even though the percentage of those injured be not large, a duty arises to and a responsibility rests upon the manufacturer and dealer with knowledge, to the extent, at least, of warning the ignorant consumer or user of the existence of the hidden danger. Failing to do so, the dealer, as well as the manufacturer, who has the knowledge and does not impart it, is liable to a subsequent, ignorant purchaser, reasonably within contemplation of the parties to the original sale, for injuries sustained through such hidden dangers. This is by reason of the duty the dealer owes to the public generally, which includes all whom it may concern, to give notice of any concealed dangers in the commodity in which he traffics, and to exercise a reasonable precaution for the protection of others commensurate with the peril involved. We think this principle applicable to the case at bar and fairly deducible from the many authorities touching manufacture and sale of dangerous commodities. *Thornton* v. *Dow,* 60 Wash 622 (111 P 899, 32 LRA NS 968), and authorities cited and reviewed in *Tomlinson* v. *Armour & Co.,* 75 NJL 748 (70 A 314, 19 LRA NS 923)."

If such duty to warn of a known danger exists at point of sale, we believe a like duty to give prompt

warning exists when a latent defect which makes the product hazardous to life becomes known to the manufacturer shortly after the product has been put on the market. This, General Motors did not do.

We note, but reject, defendant's argument to the effect that even if it had a duty to warn, its failure to do so had no effect on this accident because Friend learned without warning (by brake failure) that he had no brakes. This record shows that Friend took good care of his automobile. Prompt warning to him would in all likelihood have meant repair before any brake failure occurred. Prompt warning could easily have prevented this accident.

In short, we believe there was evidence in this record from which the jury could have found negligence on the part of this defendant.

The question still remains, however, as to whether such negligence, if found, was entirely antecedent and severed from plaintiff's injury, as a matter of law, by the negligence of the assistant service manager. Where the negligent act of the assistant service manager intervened, did it also supersede the claimed negligence on the part of defendant General Motors?

Generally, the effect of an intervening negligent act is tested by determining whether or not it was such as might reasonably have been foreseen as a consequence of the claimed negligence of the original actor. See *Palsgraf* v. *Long Island R. Co.,* 248 NY 339 (162 NE 99, 59 ALR 1253).

*Cf.* Prosser, Palsgraf Revisited, 52 Mich L Rev 1.

The foreseeability rule of *Palsgraf* has been defined with sufficient precision to fit our present legal problem in Restatement of the Law of Torts.

In *Parks* v. *Starks,* 342 Mich 443, this Court adopted this basic statement (p 447):

"Where an act of negligence is a substantial factor in bringing about an injury, it does not cease to be a legal and proximate cause thereof because of the intervention of a subsequent act of negligence of another which contributed to the injury, if the prior act of negligence is still operating, and the injury inflicted is not different in kind from that which would have resulted from the prior act. 2 Restatement, Torts, §§ 440–442, 447."

Here, General Motors' acts or omissions in relation to supplying and failing to warn about the defective brakes were clearly operative to the point of impact in this accident. And the injury which resulted is the kind of injury which defective brakes produce.

See *Berry* v. *Visser,* 354 Mich 38, 46, 47.

Even closer to point is 2 Restatement, Torts, § 447:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted."

We feel that both (a) and (b) above are applicable. It takes no great imagination to foresee possibility of some negligence in the handling of a car on which a "no brake" condition is known to exist. This is particularly true if such "no brake" conditions are created in large numbers. The jury could have found that the negligence of General Motors set this whole train of events in motion and played a sub-

stantial role in the final event. The intervening negligence herein was not deliberate or wanton or wilful. Nor was it extraordinary in character. Wentworth did not deliberately determine to drive a car with no brakes. He forgot. No more human error can be conceived of. We think such forgetfulness as is revealed by the facts herein cannot be held to be beyond reasonable foreseeability.

The law does not require precision in foreseeing the exact hazard or consequence which happens. It is sufficient if what occurred was one of the kind of consequences which might reasonably be foreseen. *Bahlman* v. *Hudson Motor Car Co.,* 290 Mich 683 (7 NCCA NS 790); *Clumfoot* v. *St. Clair Tunnel Co.,* 221 Mich 113; *Parks* v. *Starks, supra.*\*

We do not believe that Wentworth's negligence in forgetting the "no brake" condition of the Buick may be considered, as a matter of law, to be a superseding cause of this accident which insulates defendant from liability.

The remaining question is whether or not the negligence which we have held a jury could have found on General Motors' part was such a continuing and substantial factor in producing this accident as to be a proximate cause of the injury.

This question is, however, a question of fact, rather than a question of law.

There may, of course, be more than 1 proximate cause concurring to occasion an injury. *Gleason* v. *Hanafin,* 308 Mich 31; *Barkman* v. *Montague,* 297 Mich 538; *Lane* v. *B & J Theatres, Inc.,* 314 Mich 666.

Generally, the question of proximate cause is held to be one for the jury. *Selleck* v. *Lake Shore & M. S.*

---

\* In a leading case decided in 1957 on facts quite foreign to these facts but involving the same legal problems, the San Francisco superior court arrived at much the same conclusions we have expressed herein. *Ferroggiaro* v. *Bowline,* 153 Cal App2d 759 (315 P2d 446, 64 ALR2d 1355).

*R. Co.,* 93 Mich 375 (18 LRA 154); *Harding* v. *Blankenship,* 274 Mich 118; *Sitta* v. *American Steel & Wire Division of United States Steel Corporation* (CCA 6), 254 F2d 12.

Under these facts, we believe that plaintiff's claims of negligence and proximate causation of his injury on the part of defendant General Motors were properly questions of fact for the jury.

We have considered the cases relied upon by defendant and the trial judge: *Ford Motor Co.* v. *Wagoner,* 183 Tenn 392 (192 SW2d 840, 164 ALR 364); *Ford Motor Co.* v. *Atcher* (Ky), 310 SW2d 510; *Stout* v. *Madden & Williams,* 208 Or 294 (300 P2d 461).

In the Tennessee case, the facts differ from those in our instant case in that there was a warning by defendant to the purchaser and a deliberate continued use of the automobile without repair in the face of known danger.

In the Kentucky and Oregon cases, the evidence showed the purchaser knew more about the defect than did the seller and deliberately continued use of the automobile without repair.

We do not consider the holding of these cases in point as to our present facts, nor their dicta controlling.

We hold that plaintiff is entitled to a jury determination on his cause of action.

Reversed and remanded for new trial. Costs to appellants.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred.