SELMO *v.* BARATONO

OPINION OF THE COURT

1. PRODUCTS LIABILITY—AUTOMOBILES—BUMPER BRACKETS—TOWING POINTS—QUESTION OF FACT.

Question of fact whether an automobile manufacturer should have anticipated the use of the front bumper brackets of a car it had manufactured as towing points was created even though the current owner's guide made no mention of using the brackets for towing, where the owner's guide from years immediately previous to the current guide stated that the brackets were the towing points and a wrecker operator testified that the brackets on the defendant driver's automobile, a current model, were similar to the brackets of models from the past years.

2. PRODUCTS LIABILITY—AUTOMOBILES—BUMPER BRACKETS—TOWING POINTS—REASONABLE CARE.

An automobile manufacturer was obligated to use reasonable care in employing designs, selecting materials, and making assemblies of bumper brackets to the end that the brackets were reasonably safe for use as towing points once the trier of fact had determined that the manufacturer should have anticipated the use of the bumper brackets as towing points.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 38 Am Jur, Negligence § 344 *et seq.*
[3] 38 Am Jur, Negligence § 12 *et seq.*
[5] 38 Am Jur, Negligence §§ 27, 28, 87.
[6] 38 Am Jur, Negligence § 11 *et seq.*
[7] 38 Am Jur, Negligence § 158.
[8, 9, 12] 38 Am Jur, Negligence §§ 166, 351.
[10] 58 Am Jur, Trial § 180.
31 Am Jur 2d, Expert and Opinion Evidence §§ 24, 25.
[11] 38 Am Jur, Negligence § 231.

3. Products Liability—Automobiles—Towing Brackets—Manner of Use—Foreseeability—Question of Fact.

> Whether an automobile manufacturer should have foreseen the particular manner in which the operator of a wrecker would use the front bumper brackets of an automobile for towing was a question of fact where it was shown that the brackets had been intended for such use by the manufacturer in cars of earlier years, and that the brackets on the automobile in question appeared similar to those of earlier years.

4. Products Liability — Negligence — Automobiles — Bumper Brackets — Towing Suitability—Evidence—Duty to Test.

> Testimony showing that automobile bumper brackets were represented as fit for towing, but that the automobile manufacturer never tested the brackets to determine their suitability for towing could be properly regarded as evidence of negligence, because the manufacturer was obligated to make such tests as were reasonably necessary to secure the production of a safe article.

5. Products Liability—Negligence—Automobiles—Prima Facie Case—Evidence.

> Evidence consisting of testimony by an operator of a wrecker that bumper brackets on defendant-driver's car were similar to those of models of past years, defendant automobile manufacturer's owner's guides for cars of similar make as defendant-driver's car, but for the years immediately before defendant-driver's car, stated that bumper brackets were the towing points, testimony of plaintiffs' expert witness that the bumper brackets were defectively designed and manufactured for use as towing points, and testimony that the automobile manufacturer never tested the brackets to determine their suitability for towing established a *prima facie* case of actionable negligence against the manufacturer for injuries sustained when the towing brackets on the defendant-driver's car, while being towed, failed and released the car, which collided with plaintiffs' car, even though there was evidence tending to show that the wrecker's operator negligently connected the defendant-driver's car to the tow truck, because whether there was a superseding cause was a question of fact.

6. Negligence—Evidence—Statutes—Negligence Per Se.

> Violation of a statute constitutes negligence *per se.*

7. NEGLIGENCE—VIOLATION OF STATUTE—PROXIMATE CAUSE—QUESTION OF FACT.

A violation of a statute, although negligence *per se*, must be the proximate cause of the injury complained of before liability is established; the question of proximate cause is one of fact.

8. NEGLIGENCE — VIOLATION OF STATUTE — PROXIMATE CAUSE — DIRECTED VERDICT.

Failure to direct a verdict against the employer of a wrecker operator was not error even though the operator failed to use safety chains while towing a car where plaintiffs were injured when the bumper brackets-towing points of the car being towed failed and released the car and the car collided with plaintiffs' car because the negligence must be a proximate cause of the injury complained of and proximate cause is a question of fact.

9. WITNESSES—EXPERT WITNESSES—QUALIFICATIONS—DISCRETION.

The determination of the qualifications of an expert witness is within the trial judge's discretion.

10. DAMAGES—AUTOMOBILES—SEAT BELTS—USE.

Failure to use a seat belt in an automobile is, as a matter of law, not appropriate as a damage-mitigating factor.

CONCURRING OPINION BY O'HARA, J.

11. NEGLIGENCE — VIOLATION OF STATUTE — PROXIMATE CAUSE — DIRECTED VERDICT.

*An essential distinction exists between instructing the jury that the proofs established that a party defendant violated a statute and thus was guilty of negligence as a matter of law but leaving the question of proximate causality to the trier of fact, and directing a verdict of liability, leaving to the trier of fact only the assessment of damages; a judge must deny a motion requesting a directed verdict of liability where there is a question of proximate causality.*

Appeal from Delta, Bernard H. Davidson, J. Submitted Division 3 April 30, 1970, at Marquette. (Docket No. 7,652.) Decided November 30, 1970. Leave to appeal denied April 22, 1971. 384 Mich 834.

Complaint by James and Carole Selmo against Arthur Baratono, Sr., Arthur Baratono, Jr., and

Curran Chevrolet Sales for personal injuries. General Motors Corporation joined as a defendant. Third-party complaint by Curran Chevrolet Sales against General Motors Corporation for a defective product. Verdict and judgment for plaintiffs against defendant General Motors Corporation. Judgment of no cause of action for defendants Curran Chevrolet Sales, Arthur Baratono, Sr., and Arthur Baratono, Jr., and third-party complaint dismissed. Defendant General Motors Corporation appeals. Affirmed.

*Chapekis & Chapekis* and *Phillip E. Blecher,* for plaintiffs.

*Plunkett, Cooney, Rutt & Peacock* (*Ross L. Malone* and *Otis M. Smith,* of counsel), for defendant General Motors Corporation.

Before: FITZGERALD, P. J., and J. H. GILLIS and O'HARA,* JJ.

J. H. GILLIS, J. This is a products liability case. Plaintiffs' complaint charged the defendant General Motors Corporation with negligence in the design and manufacture of a 1965 Corvair automobile. In particular, plaintiffs claimed that the towing components of the Corvair in question were defective and that, as a result of such defect, plaintiffs proximately suffered serious injuries.

The case was tried in Escanaba, Michigan, before Circuit Judge Bernard Davidson. On February 1, 1969, a jury returned a verdict against General Motors in the amount of $460,000. General Motors' mo-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23, as amended in 1968.

tions for judgment notwithstanding the verdict and for new trial were denied by Judge Davidson on April 17, 1969. Judgment was thereafter entered on the verdict. General Motors appeals.

The first question presented is whether plaintiffs successfully established a *prima facie* case of actionable negligence against the defendant manufacturer. General Motors contends that the trial court should have granted its motion for a directed verdict made at the close of plaintiffs' case in chief. We state the facts and reasonable inferences therefrom in the light most favorable to plaintiffs in order to "accord plaintiffs that full measure of favorable view to which they were entitled upon submission of defendant's said motion." *Schedlbauer* v. *Chris-Craft Corporation* (1968), 381 Mich 217, 221. So stated, they are set forth below.

On June 18, 1966, plaintiffs James and Carole Selmo were seriously injured as a result of a head-on automobile collision between their vehicle and a 1965 Corvair owned by Arthur E. Baratono. The Corvair was designed and manufactured by the defendant General Motors Corporation.

Sometime before the accident, the Corvair's transmission had failed, disabling the Baratono vehicle. Its driver called for the service assistance of Curran Chevrolet Sales and a wrecker was sent by Curran to the scene of the disabled Corvair. This wrecker was operated by Gerald Johnson, a Curran employee. Upon arrival at the scene, Johnson attached the Corvair to his wrecker by means of two tow chains. Each chain was permanently affixed to the wrecker's tow bar at one end; at the loose end of each chain there was a steel grabhook. Johnson inserted these grabhooks into the towing components of the Baratono vehicle. The towing components of a Corvair were located, according to Johnson's expe-

rience, in the front bumper brackets. The Corvair was then hoisted by means of this attachment and it was towed by Johnson for approximately 12 miles.

After 12 miles of successful towing, both bumper brackets failed, releasing the steel grabhooks and dropping the Corvair to the highway below. At the time, the wrecker was traveling at approximately 45 miles per hour. Immediately thereafter, the Baratono Corvair crossed the center line of the highway and collided head-on with the Selmos' vehicle.

Plaintiffs' claim against General Motors was based on legal principles first enunciated by Mr. Justice Cardozo in the now famous *MacPherson* case (*MacPherson* v. *Buick Motor Co.* [1916], 217 NY 382 [111 NE 1050]). The rule of manufacturer's liability stated in *MacPherson* has been adopted in Michigan. See *Comstock* v. *General Motors Corporation* (1959), 358 Mich 163. It was plaintiffs' claim that the front bumper brackets of the Baratono Corvair were "things of danger" within the *MacPherson* rule, *i.e.,* that the brackets in question were reasonably certain to place life and limb in danger if negligently made.

A modern statement of the theory on which plaintiffs relied is found in 2 Restatement Torts, 2d, § 395, p 325, as follows:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied."

General Motors contends that the facts adduced at trial do not warrant application of the *MacPherson* rule or its modern restatement. In its brief General Motors argues:

"Bumper brackets are not, by nature, that type of part or material which, if negligently designed or manufactured, are such to make it reasonably certain that life and limb would be endangered."

We disagree. On the evidence presented at trial the jury could have concluded that the brackets in ques- tion were intended to be utilized as towing com- ponents. Moreover, whether a defective towing com- ponent would, to a reasonable certainty, place life and limb in danger was a question of fact for the jury. *Cf. Goullon* v. *Ford Motor Co.* (CA6, 1930), 44 F2d 310.

At trial, there was evidence that General Motors intended the front bumper brackets of the Corvair in question to be used as towing points. Gerald Johnson testified that he first learned of such in- tended use from General Motors' own literature. Corvair owners' guides for the years 1962–1964 con- tained the following notation:

"Attaching points for lifting and towing are lo- cated in the front and rear bumper brackets."

And, although the 1965 owner's guide contained no such recommendation, Johnson testified that the brackets on the front of the Baratono vehicle ap- peared similar to those of earlier years and that, as a result, he utilized the front brackets for towing. From this evidence, the jury could find that General Motors should have anticipated the use of the front bumper brackets of the Baratono vehicle as towing points. Under these circumstances, General Motors was obligated to use reasonable care in employing

designs, selecting materials, and making assemblies of such brackets to the end that the brackets were reasonably safe for use as towing points. *Davlin v. Henry Ford & Son, Inc.* (CA6, 1927), 20 F2d 317; *Larsen* v. *General Motors Corporation* (CA8, 1968), 391 F2d 495; 76 ALR2d 91, Annotation; 1 Frumer, Products Liability, § 7.01[1], p 104; 1 Hursh, American Law of Products Liability, § 2.59, p 240.

We are also satisfied that whether General Motors should have foreseen the manner in which Johnson utilized the towing brackets was a question of fact for the jury. We decline to rule as a matter of law that Johnson's attachment was clearly beyond what a prudent manufacturer would foresee as something to guard against. See generally, 2 Harper & James, Torts, § 28.6, p 1546. Accordingly, we pass to the question of whether there was evidence of negligence in the design and manufacture of the brackets in question.

Dr. Thomas Despres, plaintiffs' expert witness, conducted various tests on the brackets, including tests designed to reveal the relative strength of the brackets for towing purposes. Dr. Despres testified that visual inspection of the ruptured brackets disclosed the presence of "forming cracks", flaws resulting from a miscarriage in the manufacturing process. These cracks reduced the strength of the brackets. Dr. Despres also testified that the brackets were defectively designed; that they were "notched" as a result of improper design; and that "this notch is a factor in a design which would tend to reduce the overall strength of the part". When asked whether the brackets were suitable for towing purposes, Dr. Despres testified:

"*A*. The actual design in conjunction with the manufacturing defect, the design defect, the manufacturing defects, would render the bracket

insufficiently strong to be expected to handle the loads of towing.

"*Q.* Any loads of towing?

"*A.* Well  *  *  *  in most manners of towing, I would expect that it would not be able to withstand it.

"*Q.* That includes the manner in which it was hooked up in this accident?

"*A.* In particular with reference to this accident, I would say, yes."

On the basis of Dr. Despres' expert testimony alone, there was ample evidence from which the jury could find General Motors negligent. *Cf. Goullon* v. *Ford Motor Co., supra; Kanatser* v. *Chrysler Corporation* (CA10, 1952), 199 F2d 610; *Butler* v. *General Motors Corporation* (CA2, 1957), 240 F2d 92; *Sitta* v. *American Steel & Wire Division of United States Steel Corporation* (CA6, 1958), 254 F2d 12. If believed, the Despres testimony established that General Motors failed to produce a bracket reasonably fit for its intended use or for what the jury might reasonably have found to be a foreseeable use—specifically, towing with the Johnson attachment.

That there exists in this case upon favorable-to-plaintiff view *prima facie* evidence of negligent design and manufacture distinguishes this case from *Gossett* v. *Chrysler Corporation* (CA6, 1966), 359 F2d 84, on which defendant General Motors relies. In *Gossett,* there was no evidence that the hood latch of the vehicle there involved was defective. The latch worked perfectly and was fit for the use and purpose for which it was intended. See 359 F2d, p 86. In this case, however, there is evidence from which the jury could infer that the bumper brackets of the Baratono vehicle were unfit for a reasonably foreseeable use.

Testimony was also introduced at trial which tended to show that, although Corvair brackets were represented as fit for towing, General Motors had never tested the brackets to determine whether they were, in fact, suitable for towing. The jury could properly regard this omission as evidence of negligence, because General Motors was obliged to make such tests as were reasonably necessary to secure the production of a safe article. 2 Harper & James, Torts, § 28.11, p 1557; 2 Restatement Torts, 2d, § 395, Comment f, p 328; *Ford Motor Co.* v. *Zahn* (CA8, 1959), 265 F2d 729.

We have read the additional cases cited by General Motors and find them distinguishable. We conclude that the trial court did not err in submitting the question of General Motors' negligence to the jury.

The issue of proximate cause presents no serious problem. Whether or not the negligence on General Motors' part was such a continuing and substantial factor in producing this accident as to be a proximate cause of plaintiffs' injuries was a question of fact for the jury. *Comstock* v. *General Motors Corporation* (1959), 358 Mich 163.

The *Comstock* case also refutes General Motors' contention that the intervening negligence of Gerald Johnson, driver of the Curran wrecker, superseded the claimed negligence of General Motors and insulated it from liability. At trial, there was evidence tending to show that Johnson failed to use safety chains when he attached the Baratono Corvair to the wrecker, contrary to MCLA § 257.721(c) (Stat Ann 1968 Rev § 9.2421[c]). However, whether Johnson's claimed negligence was a superseding cause of the accident was for the jury to resolve. See *Comstock* v. *General Motors, supra,* pp 178–180.

On this question, we hold that plaintiffs' proofs established a *prima facie* case of actionable negligence. It was not error to deny General Motors' motion for a directed verdict.

General Motors next assigns as error the failure of the trial court to direct a verdict against its codefendant Curran Chevrolet Sales. Curran was joined as a defendant on the basis of Gerald Johnson's alleged negligence in towing the Baratono Corvair. General Motors contends that Curran was guilty of negligence *per se* by virtue of Johnson's failure to use safety chains. The jury returned a verdict of no cause of action as against Curran.

While it is true, as General Motors argues, that violation of a statute constitutes negligence *per se* in Michigan, proof of such violation does not establish liability. The negligence must still be a proximate cause of the injury. *Beebe* v. *Hannett* (1923), 224 Mich 88. Whether Johnson's negligence was a proximate cause of plaintiffs' injuries was for the jury. *Cf. Sove* v. *Smith* (CA6, 1966), 355 F2d 264. Accordingly, the trial court did not err in refusing to direct a verdict against defendant Curran.

In addition to Dr. Despres, plaintiffs employed three other expert witnesses. General Motors contends that the testimony of these witnesses should have been excluded for lack of expert qualification.

The determination of the qualification of an expert witness is within the discretion of the trial judge. Judge Davidson was satisfied that plaintiffs' additional experts were qualified. We have reviewed the record and find no abuse of discretion in this case. Accordingly, we refuse to interfere with his ruling. *Accetola* v. *Hood* (1967), 7 Mich App 83. Moreover, we are convinced the opinions expressed by these witnesses were within the scope of their qualifications. See *Sitta* v. *American Steel & Wire Division*

*of United States Steel Corporation* (CA6, 1958),
254 F2d 12; *Farr* v. *Wheeler Manufacturing Corporation* (1970), 24 Mich App 379.

Numerous errors are assigned regarding other rulings of the trial judge. We find nothing in the alleged errors warranting interference with the verdict. GCR 1963, 529.1. The case was fairly tried and, notwithstanding General Motors' final contention, it was fairly put to the jury.

General Motors contends that the trial court erred in refusing to charge the jury that:

"If you conclude that the injuries to the Selmos were proximately caused by their failure to wear seat belts, then you can consider this in your determination of the amount of damages."

There was no error. In *Romankewiz* v. *Black* (1969), 16 Mich App 119, 127, this Court held, as a matter of law, that failure to use a seat belt is not appropriate as a damage-mitigating factor. We adhere to the *Romankewiz* decision. Accordingly, the trial court's refusal of the requested instruction was proper.

Affirmed. Costs to plaintiffs.


Fitzgerald, J. concurred.


O'Hara, J. (*concurring*). I concur with Judge Gillis, both in result and in the body of his opinion and I have indorsed it.

I write separately *only* to emphasize what I consider an essential distinction to be clearly recognized; namely, the difference between a jury instruction that the proofs established that a party-defendant violated a statute and thus was guilty of negligence as a matter of law, but leaving the question of proximate causality to the jury (or the

judge when the trier of the facts) and the direction of a verdict of liability, leaving to the trier of the facts only the assessment of damages.

Assuming *arguendo,* that defendant General Motors had joined in a motion for a directed verdict of liability against defendant Curran, I would perforce hold that on the record the trial judge was obligated to deny it because of the remaining fact question of proximate causality.

A request to charge that defendant Curran was guilty of negligence as a matter of law is another matter.

As I read the record, I, at least, cannot find any such specific request to charge having been made and a denial thereof preserved. Hence, under settled law, the question is not before us on review.

Consequently, I join in affirming the denial of the motion for a new trial and affirming the judgment entered upon the jury verdict.