# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 25, 2007 Session Heard at Maryville[1]


# JEREMY FLAX ET AL. v. DAIMLERCHRYSLER CORPORATION ET AL.


**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Davidson County**
**No. 02C-1288     Hamilton V. Gayden, Jr., Judge**


**No. M2005-01768-SC-R11-CV - Filed July 24, 2008**


GARY R. WADE, J., concurring.


I  concur with Justice Holder and Chief Justice Barker as to the propriety of the award of $5 million for the wrongful death of Jeremy Flax, apportioned one-half to the fault of the DaimlerChrysler Corporation [the "Defendant"] and the other one-half to Lewis Stockell.  I further concur in their affirmance of the trial court's reduction of punitive damages against the Defendant regarding the wrongful death action from $65,500,000 to $13,367,345.  Finally, I agree that the $2.5 million in compensatory damages awarded Rachel Sparkman for the negligent infliction of emotional distress, one-half of which was adjudged against the Defendant, and the punitive damages of $6,632,655, all of which was assessed against the Defendant, should be set aside.

Because of the lengthy trial in Davidson County and a transcript consisting of thousands of pages of pleadings, testimony, and exhibits, I commend the author, as well as the other members of this Court for the time and effort expended on record review and the resolution of these most difficult issues.  I part with my colleagues who join in the lead opinion only as to the viability of a cause of action based upon the post-sale duty to warn.  By way of explanation, I would acknowledge the Restatement (Third) of Torts: Products Liability § 10 (1998) as authority, as did the trial court. I believe, therefore, that the trial court (which, of course, could not have known prior to the verdict that the jury would ultimately sustain the pre-sale duty to warn claim) properly admitted testimony about similar accidents taking place after the sale of the 1998 Dodge Grand Caravan for the limited purpose of establishing that the Defendant had notice of the defective seat design, which contributed to the death of Joshua Flax.  For that reason, I see no need for a harmless error analysis.

The complaint included allegations that the Caravan, manufactured by the Defendant and operated by Jim Sparkman at the time of the accident, included front seats that were defective and

---

[1] Oral argument was heard in this case in Maryville, Blount County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

unreasonably dangerous, and which posed a danger to any children seated directly to the rear.[2] Because the Defendant had failed to issue any warnings to consumers of that danger, there were allegations that the company was responsible for compensable damages under the Tennessee Products Liability Act of 1978. Tenn. Code Ann. §§ 29-28-101 to -108 (2000). Moreover, Jeremy Flax, Joshua's father, and Rachel Sparkman, his mother [the "Plaintiffs"], maintained that punitive damages were warranted because the Defendant, who knew or should have known of the safety defects, had acted intentionally and recklessly, by continuing to market and sell the Caravan as particularly safe for families with children.

About three weeks before the trial, the Plaintiffs filed a trial brief advocating jury instructions pertaining to the manufacturer's liability, not only for harm caused by a pre-sale failure to warn of the defective seating, but also for a post-sale failure to warn. More specifically, the Plaintiffs argued that a jury charge on post-sale failure to warn was warranted because many Caravan owners had notified the Defendant after 1998 about the poor performance of the seats in relatively minor accidents. The Plaintiffs sought permission to introduce as evidence several documents arising from telephone calls to "Cares," a call-in service offered by the Defendant to its customers. Some 385 instances were brought to the attention of the trial court in the pretrial proceedings. Many of these complaints involved collisions into the rear of the minivans where the front seats had yielded or collapsed in a backward manner, and a passenger was injured as a result. In several instances, children sitting behind the yielding seats were seriously injured. Following these reports, engineers employed by the Defendant inspected the vehicles and provided their findings to the company.

Shortly before the trial, the Defendant filed a reply brief, arguing that this state did not recognize a post-sale duty to warn and citing an unpublished opinion from the Court of Appeals as authority for that proposition. Irion v. Sun Lighting, Inc., No. M2002-00766-COA-R3-CV, 2004 WL 746823, at *17 (Tenn. Ct. App. Apr. 7, 2004) ("Although the Restatement (Third) of Torts adopts some post-sale duties, Tennessee had not adopted those provisions and, in any event, Ms. Irion's proof would not trigger those duties."). The Defendant further objected to the admission of the complaints on hearsay grounds.

At the conclusion of a pretrial hearing, the trial court held that the ruling in Irion did not preclude the application of the most recent version of the Restatement and permitted an alternative claim under the post-sale duty to warn theory. Because the trial court concluded that the telephone complaints about the seats were not to be admitted to prove the truth of the matter asserted, but to establish that the Defendant had adequate notice of the potential danger, thirty-seven of these complaints were held to be admissible. Twelve of the complaints were prior to the Plaintiffs' purchase of the Caravan. Twenty-five occurred afterward and, therefore, were only relevant to the theory of recovery based upon post-sale duty to warn. At trial, this evidence was presented as a part of the Plaintiffs' proof. At the conclusion of the testimony, the trial court instructed the jury to

---

[2] In this state, the purpose of a complaint is to provide notice of a claim; "minimum general facts that would support a potential cause of action" are necessary. Wicks v. Vanderbilt Univ., M2006-00613-COA-R3-CV, 2007 WL 858780, at *13 (Tenn. Ct. App. Mar. 21, 2007).

consider the complaints of the similar accidents only for the limited purpose of establishing that the Defendant was aware of the potential defect in the seats of the Caravan.[3] Ultimately, the jury determined that the Defendant failed in its duty to issue warnings both prior to the sale of the vehicle and afterward, and awarded compensatory damages.

The Tennessee Rules of Civil Procedure allow for alternative pleadings:

A party may set forth two (2) or more statements of a claim or defense alternately or hypothetically. When two (2) or more statements are made in the alternative and one (1) of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he or she has, regardless of consistency.

Tenn. R. Civ. P. 8.05(2) (2007); Barnes v. Barnes, 193 S.W.3d 495, 501 (Tenn. 2006) ("[A]lternative pleadings are expressly permitted, regardless of consistency."); see also Worley v. Weigel's, Inc., 919 S.W.2d 589, 594 (Tenn. 1996) ("An alternative pleading may not be used as an admission."). Like the trial judge, I believe that in these circumstances the Plaintiffs were entitled to present alternative theories of recovery as to duty to warn and that there was material evidence to support the verdict of the jury as to the viability of either claim. See Cover v. Cohen, 461 N.E.2d 864, 871 (N.Y. 1984) (stating that whether a duty to warn arises depends on the "degree of danger which the problem involves and the number of instances reported").

The relevant section of the Restatement provides as follows:

(a) One engaged in the business of selling or otherwise distributing products is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning.

(b) A reasonable person in the seller's position would provide a warning after the time of sale if:

(1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and

(2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and

---

[3] The Defendant filed a motion for an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure with regard to the post-sale duty issue. This motion was denied by the trial court and, later, also denied by the Court of Appeals. See Flax v. DaimlerChrysler Corp., No. M2005-01768-COA-R3-CV, 2006 WL 3813655, at *3 (Tenn. Ct. App. Dec. 27, 2006).

(3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and

(4) the risk of harm is sufficiently great to justify the burden of providing a warning.

Restatement (Third) of Torts: Products Liability § 10.[4]

In my assessment, a post-sale duty comports with both public policy and traditional tort theory. The many jurisdictions recognizing a duty of post-sale failure to warn agree that a claim for damages should be permitted when the manufacturer is aware that the product is defective or unreasonably dangerous after the sale and fails to take reasonable steps to warn those buyers who have purchased the product. See, e.g., Luvick v. Wil-Rich, 588 N.W.2d 688, 693 (Iowa 1999); Patton v. Hutchinson Wil-Rich Mfg. Co., 861 P.2d 1299, 1313 (Kan. 1993); Owens-Illinois, Inc. v. Zenobia, 601 A.2d 633, 645-46 (Md. 1992); Comstock v. Gen. Motors Corp., 99 N.W.2d 627, 634 (Mich. 1959); see also, Douglas R. Richmond, Expanding Products Liability: Manufacturers' Post-Sale Duties to Warn, Retrofit and Recall, 36 Idaho L. Rev. 7, 18 (1999). The first state to recognize the duty to warn arising after a sale was Michigan. In a case involving defective breaks in the 1953 model Buicks, the Michigan Supreme Court held that a manufacturer, who after a sale discovers a latent defect in its product, may have the responsibility "to take all reasonable means to convey effective warning to those who" have already purchased the product. Comstock, 99 N.W.2d at 634. Since this decision, a growing number of states have recognized that a manufacturer's responsibility to try to prevent foreseeable harm to its consumers does not terminate at the time of the sales transaction. On occasion, it is essential for companies to actively issue "warnings about risks discovered after sale . . . to prevent significant harm to persons and property." Restatement (Third) of Torts: Products Liability § 10, cmt. a. A post-sale warning reduces "the chance of injury by equalizing the asymmetry of information between the parties." Luvick, 588 N.W.2d at 693. Because of its specialized knowledge and frequent dealings with a product, the manufacturer is in a far better position than the consumer to discover hidden defects that are not apparent to either the buyer or seller when a product is first sold. See Comstock, 99 N.W.2d at 634.

The requirements for a post-sale duty to warn differ from a pre-sale duty in more ways than just the timing of the transaction. Because it costs more to identify and warn consumers after the sale than before the product leaves the seller's control, see Patton, 861 P.2d at 1313, a jury should be required to conduct a cost-benefit analysis when assessing liability. Restatement (Third) of Torts: Products Liability § 10(b)(4). Other factors to consider include the kind of the warning to be issued, the people to whom it is to be given, the nature of the industry, the degree of the potential harm that may result, the difficulty in locating purchasers of the product, whether the warning will be heeded

---

[4] One commentator has described the Restatement Third of Torts' summary of products liability law as "the most important development in the past three decades for those who must live in the 'nuts and bolts' world of product liability law." Victor E. Schwartz, The Restatement (Third) of Torts: Products Liability: A Guide to its Highlights, 34 Tort & Ins. L.J. 85 (1998). This Court has previously looked to the Restatement Third for guidance as to tort law in Tennessee. See, e.g., Mercer v. Vanderbilt Univ., Inc., 134 S.W.3d 121, 129 (Tenn. 2004).

-4-

if given, the potential life of the product, the kind of product involved, and the number sold. See, e.g., Rekab, Inc. v. Frank Hrubetz & Co., 274 A.2d 107 (Md. 1971); Comstock, 99 N.W.2d at 634; Cover, 461 N.E.2d at 871; Kozlowski v. John E. Smith's Sons Co., 275 N.W.2d 915 (Wis. 1979). These authorities recognize that there is not "an absolute continuing duty, year after year, for all manufacturers to warn of a new safety device which eliminates potential hazards." Kozlowski, 275 N.W.2d at 923. Whether harm was foreseeable after a manufacturer knew or should have known of a latent defect is a key issue. See Olson v. Prosoco, Inc., 522 N.W.2d 284, 288-89 (Iowa 1994). As a threshold determination of whether a post-sale duty may arise in a given case, trial courts should "carefully examine the circumstances for and against imposing a duty to provide a post-sale warning." Restatement (Third) of Torts: Products Liability § 10 cmt. a.

Considering the manner in which the post-sale duty to warn has been described by other jurisdictions, I am persuaded that its function and goals are compliant with the state of tort law in Tennessee. Consumer protection is always a priority. Further, in my view, the language of our statute defining a "product liability action" does not preclude a credible claim made under a post-sale duty to warn. Tenn. Code Ann. § 29-28-102 (2000) (stating that product liability actions include a "breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent") (emphasis added).

In this case, there was material evidence for a reasonable jury to find a post-sale duty to warn. There was testimony as to each of the four elements. With regard to the first, a reasonable juror could have determined that the Defendant, fully aware of the complaints from its customers, knew or should have known that the seats in its minivans posed a substantial risk of harm. Because buyers of the Caravan would have been readily identifiable, and it can reasonably be assumed that the drivers would not know that the seats would yield so dramatically in a rear-end collision, the second element was satisfied. See Comstock, 99 N.W.2d at 634 (imposing liability for post-sale failure to warn against an automobile manufacturer because of latent defects in the automobile). The third element was met because the Defendant could have issued warnings about the potential for injury to those occupants located directly behind the defective front seats. Fourth and finally, considering the nature of the reported injuries–serious bodily harm to children–a reasonable juror could have found that "the risk of harm is sufficiently great to justify the burden of providing a warning."

As stated, it is my view that the trial court did not err by admitting for notification purposes only the twenty-five similar incidents that occurred after the sale of the Caravan. For this reason, I believe the harmless error analysis in the lead opinion with regard to this evidence is unnecessary; otherwise, I fully concur.[5]

---

[5] By concurring with the majority, I am especially mindful that under our constitution, "the right of trial by jury shall remain inviolate." Tenn. Const. Art. I, § 6. The right to trial by jury has its origin in the common law and in the Constitution of North Carolina at the time of the formation and adoption of the Tennessee Constitution in 1796. Patten v. State, 426 S.W.2d 503 (Tenn. 1968); Garner v. State, 13 Tenn. (5 Yer.) 159 (1833). The right to jury includes the entitlement to have all factual issues resolved during a trial. Hurt v. Earnhart, 539 S.W.2d 133 (Tenn. Ct. App. 1976).

(continued...)

_____
GARY R. WADE, JUSTICE

[5](...continued)

It guarantees that the issues of fact will be determined by twelve jurors properly instructed by the trial court. State v. Garrison, 40 S.W.3d 426 (Tenn. 2000); see also Grooms v. State, 426 S.W.2d 176 (Tenn. 1968). Although not generally applicable to litigation of an equitable nature, the right to jury must not be hampered by conditions or encumbrances. Smyrna v. Ridley, 730 S.W.2d 318 (Tenn. 1987); Neely v. State, 63 Tenn. (4 Baxt.) 174 (1874). Most importantly, a jury verdict limits the scope of review on appeal, as Justice Holder has so accurately acknowledged; this court is limited to determining whether there is material evidence to support the verdict, and, in making that determination, we must take the strongest legitimate view of all the evidence in favor of the verdict, allowing all reasonable inferences in its favor and discarding all inferences to the contrary. Crabtree Masonry Co. v. C & R Constr., Inc., 575 S.W.2d 4 (Tenn. 1978). The right to trial by jury is too precious to ignore. Our duty, in general, is to yield to the will of a well-informed jury, which has seen and heard first-hand the quantity and quality of the evidence, rather than conduct and independent review from a written record. To substitute our judgment for that of the jury denigrates the importance of this basic principle in our system of jurisprudence.