McBRIDE, Judge.
This is a suit sounding in tort, the facts therein being as follows:
On August 8, 1956, the plaintiff, David Knott, and his wife were the house guests of S. Thomas Williams, the defendant, at the latter’s “summer camp,” which is situated on land fronting the Tangipahoa River in Ponchatoula, Louisiana.
Plaintiff and his wife had on several prior occasions been the guests of Mr. and Mrs. Williams, one of the occasions being during the summer of 1955 at which time there was no beach in front of the Williams property, the water from the river coming up to the bank, the top level of which was approximately 8 feet higher than the water. A tree located on the bank overhung the river and tied to one of its upper branches was a rope which hung downward. A horizontal bar of wood was affixed to the bottom end of the rope, and the evidence shows the contraption was used by the Williams family and their *518 guests when swimming in the river, the idea being that the swimmer would grasp the horizontal bar, swing out over the water, and jump or dive into the river. Plaintiff testified that on his 1955 visit to the camp he swung from the rope one time and dived into the water which he claims was very deep.
On the afternoon of August 8, 1956, plaintiff donned his bathing suit and proceeded to the river to join his wife and Mrs. Williams who were already there. Plaintiff testified several changes had been made to the Williams property since his last visit, notably a retaining wall had been constructed and sand had been pumped in from the bottom of the river to form a tapering beach approximately 8 feet wide at one end and from 2 to 4 feet wide at the other. At the narrow end a sloping wooden ramp had been positioned near or under the tree heretofore mentioned, one end thereof resting on the river bank and the other on the retaining wall which was approximately 4 feet high. We understand that the purpose of the ramp was to facilitate a person taking hold of the aforementioned rope, which was still in use, and run from the bank down the ramp and swing out over the waters of the river. On the day in question defendant’s young son by utilizing the rope dropped feet first into the water. He was followed by plaintiff who dived headfirst; plaintiff maintains he executed a breast stroke, sending his body deep into the water with the result his head and hands came into contact with the bottom of the river. He admits that after this incident he swam over to where his wife and Mrs. Williams were located and told them he had struck his head on the bottom after taking a deep dive. Plaintiff on the trial insisted he sustained no injury, but testimony elicited from plaintiff’s wife on her discovery deposition leads us to believe otherwise. Mrs. Knott in the deposition said her husband told her and Mrs. Williams that he had scratched his head on the bottom and that she examined him and noticed a small scratch on his forehead. Plaintiff at the trial of the case did not remember whether he had said anything to his wife or Mrs. Williams about having dived into shallow water, but we feel sure he did make mention that the water was shallow and not as deep as he claimed when testifying at the trial because of the statements he made on discovery. Plaintiff at that time in answer to a question whether he had mentioned to any one present that the water was shallow replied, “Yes, I stated it is a little shallow here and I touched bottom.” After plaintiff had made his initial use of the rope, it appears defendant’s son again jumped into the river and was followed by Mrs. Williams and then by plaintiff’s wife. Mrs. Knott, who is an expert swimmer, admits she hit bottom. She testified it was her intention to swing out and dive headfirst into the river, but instead of diving she jumped feet first from the rope. She concedes she “should have known better” than to jump rather than dive because “the water was too shallow to jump” into. Mrs. Knott claims she did not tell her husband about having struck the bottom when she jumped.
At any rate, after Mrs. Knott jumped, plaintiff took hold of the rope, made the outward swing, let go of the bar, and went feet first into the river. His story is that just as his lower extremities became submerged, his feet came into violent contact with a mound of sand beneath the water with the result that both of his legs were fractured.
By means of this suit he sought to recover from Williams the sum of $80,500 damages as a result of the accident, charging in his petition that the defendant was guilty of the following specifications of negligence:
“(1) by making the river bottom extremely shallow and not warning the plaintiff * * *.
“(2) in failing to remove the here-inabove mentioned rope, all of which *519 constituted in conjunction with No. (1), a trap, and an extremely dangerous instrument, inadequate for its intended purpose.
“(3) in failing to place posters or any warnings of change in depth of river bottom, or to warn anyone from using said trapeze for its obvious intended, and well accepted use.
“(4) failure of defendant’s wife to notify or warn plaintiff of his great danger, despite her presence which afforded her every opportunity to do so while plaintiff was using said trapeze for its intended use.”
The defendant in answer to the suit denied any negligence on his. part, and, alternatively, made the plea that plaintiff was guilty of contributory negligence of such nature to bar any recovery by him, such contributory negligence consisting of the fact:
“(a) That Plaintiff was familiar with the location and familiar with the depth of the water from the shoreline out towards the center of the river and knew that the water was shallow near to shore and that any attempt to jump or dive from the rope was dangerous unless the jump were made sufficiently far out to avoid the shallow water.
“(b) That Plaintiff was familiar with the rope, having used same before and was familiar with the shallowness of the water.
“(c) That Plaintiff could and did observe the visible risk undertaken by anyone attempting to use the rope for diving or jumping into the river.
“(d) That the mere act of diving or jumping into the river was a highly dangerous act and required great skill and agility.”
The trial below resulted in judgment being rendered in defendant’s favor dismissing Knott’s demands; he has appealed to this court and the matter is now before us for review.
We are absolutely convinced there is no error in the judgment. Assuming, but not deciding, that defendant was guilty of the acts of commission and omission charged and that those acts under our law would constitute negligence, no recovery can be had by plaintiff for the reason that it is clear he was guilty of such contributory negligence as would bar a successful prosecution of the suit.
When plaintiff dived into the river the first time, the fact that his head struck bottom should have brought home forcibly to him that the river was comparatively shallow in the vicinity and that any one swinging from the rope would likely come into contact with the river bottom with the possibility of sustaining bodily injury. Pie needed no warning from the defendant or any one else as the experience of striking his head should have been a grim warning that it was highly hazardous to swing from the rope. We are satisfied from the testimony that the water was much too shallow for such sport as plaintiff engaged in, of which fact he was fully cognizant.
The general rule of law is the host is not responsible for an injury to his invitee which is caused by a danger which was obvious or should have been seen or recognized by the'invitee had he exercised reasonable care or used his senses, or from a condition which was just as well known or as obvious to the invitee as it was to the inviter. Antoine v. Consolidated-Vultee Aircraft Corporation, La.App., 33 So.2d 435; Regenbogen v. Southern Shipwrecking Corporation, La.App., 41 So.2d 110; Crittenden v. Fidelity & Casualty Co. of New York, La.App., 83 So.2d 538; Alexander v. General Accident Fire & Life Assurance Corp., La.App., 98 So.2d 730, and the cases referred to therein.
Such rule must be invoked here. Plaintiff was 38 years old; he is a mature man *520 and from the record we gather he is an intelligent individual. Perhaps the water was deep in 1955 when he went swimming in the 'river, but on the day of the accident he was confronted with changed conditions and of this fact he was not ignorant. Under the circumstances, it appears to us plaintiff was most imprudent in risking injury by jumping into water he knew to be dangerously shallow. In view of defendant’s plea, we know of no theory of law or reason upon which a recovery could be predicated even though defendant be deemed guilty of primary negligence.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
JANVIER, J., absent