Johnny Paul **THIBODAUX**, Appellant,

v.

**McWANE CAST IRON PIPE COMPANY**,
Appellee.

No. 23777.

United States Court of Appeals
Fifth Circuit.

July 10, 1967.

Rehearing Denied Aug. 7, 1967.

———◇———

Robert G. Hebert, New Orleans, La., Johnny X. Allemand, Thibodaux, Kierr & Gainsburgh, Robert G. Hebert, New Orleans, La., for appellant.

John V. Baus, Patrick W. Browne, Jr., of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for appellee.

Before WISDOM and GEWIN, Circuit Judges, and HUNTER, District Judge.

GEWIN, Circuit Judge:

This product liability action was brought in the United States District Court for the Eastern District of Louisiana to recover damages for the death of appellant's wife and child and for his own personal injuries as the result of a gas explosion which occurred at his residence. The district court granted the appellee's motion for a directed verdict and from the judgment entered thereon this appeal was taken. We affirm.

On January 16, 1941, the City of Thibodaux, Louisiana, contracted with Betpouey and Rittiner, general contractors, for the construction of a natural gas distribution system to serve the City. The construction was completed in late 1941 or early 1942. Consulting engineers hired by the City, J. D. McCrary and Co., Atlanta, Georgia, designed the entire gas distribution system and prepared the detailed specifications for cast iron pipe to be used in the system. McWane Cast Iron Pipe Company (McWane) manufactured and sold to the City grey cast iron pipe in exact accordance with the specifications of the contract for use in the natural gas system.

On October 13, 1962, Johnny Paul Thibodaux (appellant), his wife and their four month old son were residing at 510 East Seventh Street in the City of Thibodaux. At approximately 7:20 that morning, there was a violent natural gas explosion and fire in the residence which inflicted fatal burns upon Mrs. Thibodaux and the infant and caused severe personal injuries to the appellant.

The Thibodaux residence was serviced by the City's natural gas system by means of a pipe which ran directly underneath the Thibodaux home. Several days after the explosion city employees excavated this gas service line. It was discovered that the outside of the pipe was corroded [1] and at one point the pipe had sustained a through-and-through break or fracture.

Betrand Hebert, Trustee of Public Property and former foreman of the Gas Department, testified that the gas service line to and under the Thibodaux residence was the original pipe manufactured by McWane and installed by Betpouey and Rittiner. According to the testimony, while several breaks had occurred in the mains, the gas service lines in Thibodaux had only suffered two breaks, the one involved in this case and one other, since they were installed in 1941, approximately 21 years prior to the explosion. At the time of the explosion and for sometime prior thereto, the City was injecting into the gas system daily a natural gas odorant as a safety precaution. In addition, an individual 14 ounce Mercury gauge leak test was performed at each meter installation whenever a meter was installed. At trial an engineer, Carl J. Welcker, gave testimony concerning a procedure whereby a mine detection meter can be used to periodically test the soil to determine the presence or absence of

---

1. A McWane employee testified that from his examination of the pipe, he determined that the maximum overall corrosion was only approximately 15 to 20 percent of the wall thickness. An engineer witness for appellant testified that the percentage of overall corrosion was an unrealistic way of measuring the degree of corrosion in a length of pipe. Such witness explained that portions of a pipe will corrode at varying rates and an overall percentage does not accurately describe this fact and therefore is misleading.

a gas leak. This procedure was not followed by the City.

Admittedly, the presence of a gas service line under the Thibodaux home was a dangerous condition. However, when the pipe was originally laid, the Thibodaux home had not been built on the property but another house was situated thereon. The service line properly skirted this predecessor to the Thibodaux residence. Between 1946–1948 this house was rolled off the premises and the Thibodaux home was constructed pursuant to a city building permit. Unknown to the builder and Nicholas Bergeron, who later purchased the house and rented it to appellant, the house had been constructed directly over the service line. Apparently this fact was never discovered until the pipe was uncovered after the explosion.[2]

A soil engineer testified that the soil under and around the Thibodaux home was sharkey clay soil. He described the soil as very plastic, holding moisture well and as it dry out, it shrinks and cracks appreciably. Testimony was also given to the effect that such soil has a high corrosion potential. Much testimony was given as to whether information about types of soil and their effect on corrosion was available in 1941. The record shows that some studies had been conducted in these areas and that a limited number of publications dealing with the subject were in existence at that time. None of the witnesses knew whether McWane had knowledge of this information in 1941.[3] However, even though McWane knew it was selling its pipe to the City for use in distributing natural gas, albeit in accordance with the specifications of the City, it gave them no information concerning the corrosive effects of the soil in the Thibodaux area on its cast iron pipe nor did the City or its consulting engineers ever ask for any. Employees of McWane testified that they considered the City's consulting engineers, who designed the gas system and specified the kind and type of cast iron pipe to be used in the system, responsible for testing the soil and learning the effects such soil would have on cast iron pipe and, consequently designing the system accordingly.

Appellant had initially brought suit against McWane and the insurers of the City of Thibodaux, which owned and operated the gas system, and Bergeron, appellant's lessor. However, prior to trial, appellant settled his claim against the insurers for the sum of $66,250.00, whereupon the suit was dismissed as to all parties except McWane, appellee.[4] Appellant based his action against McWane on the theory that McWane was negligent in that it breached a duty to inform the city that the soil in and around Thibodaux, Louisiana, would

2. Although it was suggested by counsel's examination of the witnesses that the meter readers should have spotted this condition, the testimony of the witnesses reveals that this is not necessarily true. Even though the meter was directly in back of the house and its connection to the main line was directly in front of the house, such facts do not conclusively show that the pipe was in a straight line between the two and therefore running under the house. The pipe could very well have been placed in the ground so as to angle around the Thibodaux home.

3. However, Warren C. Jeffery, product development manager at McWane, testified that at the present time, his company has data and information as to the corrosive effects of various types of soil in the areas to which McWane is supplying pipe.

4. Earlier in the proceedings McWane had filed cross-claims and/or third party complaints against Nicholas Bergeron and the insurers of the City and Bergeron alleging that their negligence was a proximate cause of the explosion and claiming that if McWane was found liable, it was entitled to recover the amount of liability from the named parties, by way of indemnity, contribution or otherwise. The district judge decided to try the case in segments, the first segment being the liability of McWane, and if the jury found that McWane was causally negligent, the issue of whether McWane was entitled to indemnity or contribution from the third party defendants would then be tried. Since McWane was found not liable, its claims against the third party defendants became moot.

cause cast iron pipe to corrode at an unusually rapid rate and that such negligence was a proximate cause of the gas explosion.[5] At the conclusion of all the evidence, the district court discussed with both counsel the motion for a directed verdict filed by McWane. The court was of the opinion that McWane had no duty to inform the City because the City or its consulting engineers knew or should have known the very information appellant claims should have been furnished by McWane. Therefore, the court granted McWane's motion for a directed verdict.

In support of the judgment of the district court, McWane in its brief asserts that the sole issue at the conclusion of the trial was whether McWane had a duty to advise the City or its consulting engineers that cast iron pipe corrodes. It argues that there is no duty to warn someone of a fact of which he knows or should know. Since the City was well aware that cast iron pipe corrodes, McWane contends that it had no duty to inform the City of such fact. It points to and strenuously argues that the District Judge was imminently correct in making the following observation:

"* * * it is known that almost everything corrodes, that is, that iron and steel corrode, and I will take judicial notice of that."

We do not adopt McWane's interpretation of the issue in this case. We have carefully read the record, particularly that portion setting out the discussion between court and counsel regarding McWane's motion for a directed verdict. It appears to us that appellant was claiming that McWane had a duty to inform the City that its pipe would corrode at an unusually rapid rate when placed in the south Louisiana soil. This claim is far different from a claim that McWane

merely had the duty to inform the City that its pipe corrodes. We also interpret the district court opinion in a similar manner. The court's decision that the City had full knowledge must be read to mean that the City was well aware of the effect that the various soils in the Louisiana area would have on cast iron pipe.

Appellant submits that there is not a shred of evidence in the record to support the court's conclusion that the City or its consulting engineers knew all the pertinent facts relating to soil corrosion. Also appellant argues that whether the City or its consulting engineers knew or should have known that south Louisiana soil has a high corrosion potential, such would not negate McWane's duty to inform the City of such facts. Therefore, appellant contends that the district court committed error in not submitting to the jury the issue of whether McWane was negligent in not informing the City and whether such negligence was a proximate cause of the explosion. We have studiously reviewed the entire record and from the evidence presented we conclude that the trial court was correct in granting McWane's motion for a directed verdict.

■ Appellant seeks relief under the manufacturer's liability doctrine relating to the duty to warn of known danger inherent in a product or in its contemplated use. A product is inherently or imminently dangerous if the nature or quality of the article is such that it will place life or limb in peril or if the product when applied to its intended use is such that it will endanger human life or property. Ford Motor Co. v. Mathis, 322 F.2d 267, 3 A.L.R.2d 1002 (5 Cir. 1963); Bish v. Employers Liability Assurance Corp., 236 F.2d 62 (5 Cir. 1956); Laclede Steel Co. v. Silas Mason Co., 67

---

5. In its pleading, appellant claimed McWane was liable for the sole reason that it had manufactured and sold defective pipe to the City. However, no evidence of defective manufacture was produced at trial. The thrust of appellant's argument at trial was that McWane had breached its duty to inform the City of pertinent facts in regard to the soil and its corrosion potential. In effect he argued that McWane had a duty to warn the City of the corrosion propensities of the pipe used by the City in the construction of the gas system as specified by the consulting engineers.

F.Supp. 751 (D.C.La.1946); Defore v. Bourjois Inc., et al., 268 Ala. 228, 105 So. 2d 846 (1958). A manufacturer or seller of such inherently dangerous product is required to give adequate warning of known harmful propensities or qualities of its product. Comstock et al. v. General Motors Corp., et al., 358 Mich. 163, 99 N.W.2d 627, 78 A.L.R.2d 449 (1959); Tampa Drug Co. v. Wait, 103 So.2d 603 (Fla. 1958); Miller v. New Zealand Ins. Co., 98 So.2d 544 (La.App. 2 Cir. 1957).

A non-defective cast iron pipe is not, in and of itself, a dangerous substance nor is there any danger inherent in such pipe. Even assuming that the grey cast iron pipe manufactured by McWane would corrode at an unusually rapid rate in the south Louisiana soil, such fact does not render McWane pipe inherently or imminently dangerous nor is such particular characteristic a dangerous quality. However, McWane sold its pipe to the City of Thibodaux for use in the distribution of natural gas throughout the City. Admittedly, McWane knew the use to which the pipe would be put. Natural gas, because of its highly inflammable and explosive character, is an extremely dangerous substance. Therefore, in view of the fact that McWane manufactured and sold its cast iron pipe for the explicit purpose of distributing natural gas, appellant submits that the fact that the pipe would corrode rapidly was an extremely hazardous characteristic which made the pipe inherently dangerous as applied to its intended use. Consequently, appellant argues that McWane was obligated to warn the City of this particular dangerous quality of its product. Again, assuming that it is true that the cast iron pipe in question would corrode at an unusually rapid rate when placed in the City's soil, we find such characteristic in a pipe manufactured for the sole purpose of distributing natural gas to be highly dangerous and very likely to cause injury to persons situated in the City of Thibodaux. Therefore, assuming that McWane was chargeable with this knowledge, it could be argued logically that it was under a duty to warn the City or its consulting engineers if it was established by the evidence that the City or its consulting engineers were not likewise chargeable with the same knowledge. It is clear that under Louisiana law the duty to warn does not exist where the other party is already aware of the danger. Singleton v. Olin Mathieson Chemical Corp., 131 So.2d 329 (La.App. 1961); Bragg v. Boh Bros. Const. Co., et al., 147 So.2d 258 (La.App. 4 Cir. 1962); Knott v. Williams, 109 So.2d 517 (La.App.1959); Sawyer v. Pine Oil Sales Co. et al., 155 F.2d 855 (5 Cir. 1946).

In this case consulting engineers, J. B. McCrary & Co., were hired by city officials to perform all the engineering work required to establish a natural gas distribution system in the City of Thibodaux. This consulting engineering firm designed and supervised the entire natural gas system and sent a resident engineer to supervise the job. They prepared detailed specifications for the system including exact specifications for the cast iron pipe which they prescribed. It was the duty of the consulting engineers to select suitable materials for the gas system and to acquaint themselves with all scientific information regarding the work they were performing, such as the corrosion potential of the pipe in the soil of the City which they specifically requested for use in the gas system. We find that the consulting engineers were familiar with or chargeable with knowledge of the corrosion characteristics of McWane pipe and that such facts were properly within the scope of their own responsibility and expertise. We therefore conclude that McWane was under no obligation to inform them of such, or to give the warning as contended by the appellant.

Appellant strongly contends that a manufacturer still has a duty to warn of the dangerous qualities of his product even though the other party is cognizant of the danger. In support of his argument, appellant relies heavily on Comstock v. General Motors Corp., supra.

However, our reading of Comstock leads us to the conclusion that it does not stand for the above proposition. Factually, the cases are vastly different. In that case General Motors discovered that its 1953 Buicks had a defective power brake system and consequently warned the Buick agencies of this fact and even supplied them with replacement parts. However, General Motors did not inform the owners of such cars. Sometime later the owner of a 1953 Buick Roadmaster discovered that his brakes had ceased to operate. He brought the car to a Buick garage and the assistant service manager told the owner he knew what was wrong. In a moment of forgetfulness the assistant manager started the car up and began to drive it into a service stall. When he went to apply the brake nothing happened and the car struck Comstock, a mechanic, crushing his right leg. Comstock sued General Motors on the theory that it was negligent in not warning the owners of the defect and that such negligence was a proximate cause of his injury. The court found that General Motors was under a duty to warn owners of the defective brakes and its failure to warn constituted negligence on the part of General Motors. One glaring and important distinction between Comstock and this case is the fact that the brakes were defective. They were not what they were supposed to be. They were just the opposite. Instead of stopping the vehicle, they permitted its continued movement. There was no evidence of any defect in the McWane pipe. Moreover, it is obvious that the owner of the Buick had nothing to do with its construction and design and obviously furnished no specifications for the materials to be used in its manufacture. Not only did General Motors know of the defect in question and fail to warn after acquiring such knowledge, it actively concealed this information and deliberately refused to advise the owner of the known defect. Since the owner was never warned and never cognizant of the fact that his car had a manufacturing defect in its power brake system, Comstock does not support appellants' position. Had the owner actually been informed of the defect or if he was chargeable with knowledge of the defect, the result in Comstock might well have been different. Indeed, it is likely that the injury would never have occurred.[6]

Appellant's argument can be interpreted to mean that in accordance with the principles of Comstock, even if the consulting engineers were aware of the danger, the laymen officials of the City were not and consequently McWane should have warned them. It is true that in Comstock, even though General Motors had warned the Buick agencies, the court found that they were also obligated to inform the owners. However, unlike Comstock, the consulting engineers were employees of the City or its agents, they were acting for the City in the construction of a city gas system, and therefore whatever knowledge they possessed, the City, by reason of this relationship, also possessed. In Comstock there was absolutely no connection between owners of Buicks and Buick agencies so that knowledge by one could not be imputed to the other.

We find it most regrettable that such a tragedy occurred. It is always unfortunate when lives and property are so needlessly and tragically destroyed. Nevertheless, it is our opinion that McWane did all that was required of it. The evidence shows that McWane manufactured and furnished to the City of Thibodaux, cast iron pipe in exact accordance with the specifications of the

---

6. The following is from the opinion:
 "We note, but reject, defendant's argument to the effect that even if it had a duty to warn, its failure to do so had no effect on this accident because Friend learned without warning (by brake failure) that he had no brakes. This record shows that Friend took good care of his automobile. Prompt warning to him would in all likelihood have meant repair before any brake failure occurred. Prompt warning could easily have prevented this accident."

City and its consulting engineers. There is no evidence that the pipe was defectively manufactured or that it contained any defect whatever. In addition, the pipe in question was sold to the City of Thibodaux some 21 years before the events involved in this litigation occurred. Finally and most importantly, the consulting engineers, hired by the City to design, supervise and control the construction of the gas distribution system were or should have been as knowledgeable of the characteristics of cast iron pipe as was McWane, perhaps more so. In these circumstances, we conclude that McWane did not breach any duty owed to the City and its consulting engineers and therefore we find that McWane was not negligent.

The judgment is affirmed.