353 So.2d 346 (1977)
Robert A. RIVERE
v.
THUNDERBIRD, INC., et al.
No. 11610.
Court of Appeal of Louisiana, First Circuit.
November 21, 1977.
Rehearing Denied December 28, 1977.
Writ Refused February 17, 1978.
Risley C. Triche, Napoleonville, of counsel for plaintiff-appellee, Robert A. Rivere.
Michael Harson, Lafayette, of counsel for defendant-appellant, Thunderbird, Inc., and Market Ins. Co.
*347 Before BLANCHE, COVINGTON and CHIASSON, JJ.
BLANCHE, Judge.
The suit before us arises from an accident which occurred when the plaintiff, Robert A. Rivere, slid head-first down a slide at Thunderbird Beach, located near Baton Rouge, Louisiana. The plaintiff-appellee was a patron at the Beach at the time of the accident. In the suit before us, on appeal, the defendants, Thunderbird, Inc., and its liability insurer, Market Insurance Company, are appealing the judgment of the trial court against them and in favor of the plaintiff-appellee in the amount of $5,000.00 in general damages, together with $3,672.89 in special damages.[1] We reverse.
The record reveals that the plaintiff-appellee, along with members of his family and his brother's family, picnicked at the Beach, an amusement park operated by Thunderbird, Inc., on October 4, 1974. One of the amusement devices was the slide on which Rivere was injured. This slide was arranged so that the edge (end of the slide) protruded over a man-made lake which was used for swimming by the patrons of the Beach. The slide was about 30 feet in height and had approximately 119 feet of sliding surface from top to bottom, which surface had water running over it continuously and purposefully, in that it thereby increased the sliders' speed. The depth of the water was about three feet on the date of the accident.
The plaintiff-appellee, as well as other members of his party, had slid down the slide several times prior to the accident. Rivere described the slide which resulted in his injury as a head-first one which terminated in his hitting the bottom of the lake, sticking in the sand up to his ears. He struck the bottom of the lake with such force that he was stunned, necessitating a rescue which was effected by his nephew. The members of his party who observed the accident corroborated Rivere's version of the accident. The defendants rested their case without putting on any testimony.
The duty of the operator of an amusement park to his patron is that of ordinary care; he impliedly represents that he has used reasonable care in inspecting and maintaining the amusement devices and that they are reasonably safe for the purposes intended. See Lefort v. Ponchatoula Beach Development Corporation, 292 So.2d 354 (La.App. 1st Cir. 1974).
The trial judge did not find the slide to be inherently dangerous. He was of the opinion that the height of the slide and the depth of the water created a hazardous condition and that what made it particularly hazardous was the lack of instruction with regard to how one should enter the water. Elsewhere in his opinion he seemingly contradicts this when he states that the speed with which one descends the slide is such that one does not have time to position his body in order to glide over the top of the water as opposed to being projected downward. Although some of plaintiff's kinfolks who used the slide that day so testified, the statement cannot possibly be true, for otherwise the risk of injury would be so great that surely some of them would have suffered the same fate.
The trial judge was absolutely correct when he surmised how plaintiff suffered injury when he stated:
"* * * He must have hit it with his head down or his arms down or his body bent just below the shoulders in some fashion as to cause his body to go downward rather than outward." (Record, p. 233)
We certainly agree with his observation but disagree that plaintiff could have had no control over his body as he exited the slide. Its constant use by others without injury and the absence of evidence as to its inherently dangerous nature (designed so as to propel its users downward) support this finding.
*348 Accordingly, if the trial court did not find the slide to be inherently dangerous, then in order to prevail in the case, plaintiff would necessarily be required to prove some negligence on the part of the defendant by a preponderance of the evidence.
At this point it is pertinent to note that recurring throughout the jurisprudence of this state is the consistent rule that a proprietor of a place of public amusement is not an insurer of the safety of his patrons. Givens v. De Soto Bldg. Co., 156 La. 377, 100 So. 534 (1924); Cassanova v. Paramount-Richards Theatres, 204 La. 813, 16 So.2d 444 (1943); Gilliam v. Serrano, 162 So.2d 32 (La.App. 1st Cir. 1964), writ refused, 246 La. 77, 163 So.2d 356; Spiers v. Lake Shore Enterprises, Inc., 210 So.2d 90 (La.App. 1st Cir. 1968).
Thus, if the defendant is not an insurer or there is no finding of strict liability, then unquestionably the burden is on plaintiff to prove negligence. As we evaluate the matter, the defendant had control over three factors which the trial judge touched upon in his oral reasons, to-wit: (1) the slide itself, (2) the water, and (3) the notice to patrons. An examination of these factors as they relate to the plaintiff follows.
As to the slide, we agree with the trial judge that the slide was not inherently dangerous.
Concerning the water, we believe that the testimony of plaintiff provides the most significant facts in determining if defendant's control over the water could be the basis of negligence. Plaintiff stated that prior to his injury he slid down the slide four or five times head first, that he had not hit the bottom with his head, that all day long he had observed other patrons negotiating the slide, and that he was aware the water was approximately three feet deep. With plaintiff having the benefit of his own experience with the slide, combined with his observation of others safely using the slide and his knowledge of the depth of the water, we fail to find any basis for the defendant's negligence concerning the water factor insofar as it affected the plaintiff.
In regard to notice of patrons, or as the trial judge states "lack of instruction," we are of the opinion that plaintiff needed no instructions. As pointed out above, he had the benefit of his own experience and observations, and we are even more impressed that he had sufficient knowledge to enter the water without injuring himself. When asked, in his diving experience, how he would dive if he wanted to dive from a particular point and stay as close to the top of the water as possible, he replied that he would dive on an angle "not to go too deep." While the trial judge does not specify the nature of the instructions which he believed should have been given, he stated:
"* * * I think that what makes this particularly dangerous is the lack of instruction with regard to how one should enter the water. * * *" (Record, p. 232)
If this had been plaintiff's first dive, we would agree, but with the plaintiff's knowledge and experience, we cannot conceive of any instruction which would include information that he did not already have.
Finally, we observe that there is some element of risk in every sport. The plaintiff was thirty-one years old, had used the slide before and seen its use by others. He was familiar with the depth of the water and knew or should have known that if he entered the water at a downward angle he would certainly injure himself. The slide was not designed to prevent someone from projecting himself downward after one left the slide and entered the water, so there was definitely a risk of injury if one did not enter the water properly. The plaintiff had sufficient knowledge and experience to be charged with a lack of judgment if he did not enter the water in a manner to prevent striking the bottom. We conclude that plaintiff injured himself through his own fault and should not be allowed to recover.
For the above and foregoing reasons, the judgment of the trial court is reversed and set aside, and judgment is rendered herein *349 dismissing plaintiff's suit at plaintiff's costs.
REVERSED AND RENDERED.
NOTES
[1] The suit was dismissed, with prejudice, against defendants, Bruce A. Facundus, Jr., Bruce A. Facundus, Sr., John L. Facundus, and the partnership, Thunderbird Beach, composed of Bruce A. Facundus, Jr., Bruce A. Facundus, Sr., and John L. Facundus, who had been joined as alternative party defendants.