416 So.2d 1371 (1982)
Terry SONNIER, Plaintiff-Appellant,
v.
Melvin DUPIN, et al., Defendants-Appellees.
No. 82-87.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1982.
*1372 Rogers & St. Romain, Lake Charles, for plaintiff-appellant; Jack Rogers and John M. Crochet, Lake Charles, of counsel.
Hall, Lestage & Lestage, David R. Lestage, DeRidder, Durrett, Hardin, Hunter, Dameron & Fritchie, Emile Rolfs, III, Cassandra Simms, Baton Rouge, for defendants-appellees.
Before FORET, STOKER and DOUCET, JJ.
STOKER, Judge.
This is a personal injury action growing out of a diving accident. Plaintiff-appellant Terry Sonnier dove from the bank of Bundicks Creek in Beauregard Parish, Louisiana, and injured himself when he struck a shallow bottom. His injuries have left him paralyzed and a quadriplegic. The plaintiff was a minor at the time this suit was filed and was substituted as a plaintiff when he became of age. The defendants-appellees are certain deputies and employees of the Sheriff's Department of Calcasieu Parish and the State of Louisiana as their alleged employer and as owner of the premises where the accident occurred.

FACTS
At the time of the accident Terry Sonnier was sixteen years old and was a member of an Explorer Post, a unit in the Explorer program of the Boy Scouts, sponsored by the Sheriff's Department of Calcasieu Parish (Sheriff's Department). The Sheriff's Department also sponsored an organization of Junior Deputies, boys and girls younger than the Explorers. The Sheriff's Department projected an outing for the Junior Deputies at Bundicks Creek in Beauregard Parish, and members of the department agreed that the Explorers could also attend. As a condition of their going on the outing, Explorers had to help handle the younger group, the Junior Deputies. Deputy Dupin advised the group that a section of the creek in shallow water would be roped off, and the swimmers should remain within the roped-off area. Additionally, the group was told not to run and jump into the water because an accident occurred in a previous year's outing when a girl stepped on broken glass. Deputy Dupin and Deputy Kenneth W. Potts, assisted by some of the Explorers, tied a rope across one end of the creek and then "walked the creek" toward a deeper end. A rope was to be tied in the deeper water which was relatively shallow. The purpose of the walking procedure was to discover deep holes, objects, debris, bottles and other foreign matter, if any, in the roped-off area which might cause injury to a swimmer.
Deputy Dupin tried to fix the second limit of the swimming area by tieing one end of the rope at one bank and moving to the other bank, but the rope was too short. He sent for additional rope. While Dupin was in the water waiting for the additional rope, plaintiff's accident occurred.
Approximately nine Explorers made the outing. Some of them, including plaintiff Terry Sonnier, had moved a short distance beyond the roped-off area. They had begun diving from the creek bank about one foot above the water level. It is disputed whether Deputy Dupin was aware of the actions of the Explorers. All insisted that they had been given permission to go outside the roped-off area. Deputy Dupin denies having given the Explorers permission. In addition, he testified that he was unaware of their presence beyond the rope. Dupin was standing in the water with the *1373 rope behind him. By this time the Junior Deputies had apparently "buddied up" and had entered the water and were splashing about. Deputy Dupin stated that any diving noise the Explorers made was not heard or was not distinguishable from the noise created by the Junior Deputies.
The water in which the Explorers were diving was shallow. The evidence is that the depth was between three and four feet, or at most five feet. Each of the Explorers made at least one dive or jump into the water. Some stated they made four or five dives. Terry Sonnier himself had made two dives and was injured on his second dive. It is apparent that except for Terry's unfortunate dive, all the dives must have been shallow ones or were made straight out from the bank so that the divers either did not penetrate deeply or they hit the top of the water. What Terry did on his second dive is not clear. Terry remembers little of the event. He dove and then did not come up above the water surface. When Terry did not surface, his older brother Joe and one or more other Explorers went in and brought him up, got him out of the water and sat him up on the bank. Deputy Dupin was alerted at this point and all the adults came to the place where Terry was located on a ledge of the creek bank. A cot belonging to one of the adults was brought, and Dupin and Potts placed Terry on the cot. The ledge of the bank was about one foot above the creek level. The creek bank then sloped upwards perhaps seven or eight feet above the ledge, as shown by a picture introduced into evidence. Terry was carried up this embankment of the cot in a level position.
The deputies contacted the Beauregard Parish Sheriff's Department and requested that an ambulance pick up Terry Sonnier. When it was determined that it would take some forty-five minutes for the ambulance to arrive from DeRidder, Terry, while remaining on the cot, was placed inside a van belonging to one of the adults. The owner drove toward DeRidder to meet the ambulance half way in order to save time.
When brought out of the water, Terry Sonnier apparently had no feeling in his extremities. As stated above, he is a quadriplegic as a result of his injuries.

PLEADINGS AND PARTIES
This suit was first asserted by Terry Sonnier's mother individually and on behalf of Terry as a minor. Initially, she named as defendants the Sheriff of Calcasieu Parish, The Calcasieu Parish Police Jury and Deputy Sheriff Melvin Dupin along with insurers.[1] Terry Sonnier was later substituted as an additional plaintiff in his own right when he became eighteen years old. His mother, Shirley LeDee, remained in the case as a claimant for Terry's medical expenses incurred during his minority.[2] Subsequently, other Deputy Sheriffs were named as additional defendants. These were Frank Adams, Gene Morgan, Ray Jordan and Kenneth Potts. Also by amendment, the State of Louisiana was named as a defendant with allegations that the State was guilty of negligent acts "through its agents and employees who operate, control and maintain the Bundicks Lake area, as well as the Deputy Sheriff [sic] for which the State is responsible ...". The State is charged with negligence generally consisting of inadequate supervision of the area, failing to have "medical help and facilities available," failure to provide life guards, failure to designate various swimming areas as safe or unsafe and not adequately warning the public of the known dangers in the swimming area or of those which could be reasonably anticipated.
*1374 The allegations of negligence as to the officials and employees of the Sheriff's Department, Deputy Dupin in particular, are extensive. Acts of negligence leading up to the diving accident and failure to properly handle Terry Sonnier after injury in view of his particular injury are alleged. Plaintiffs also invoked the doctrine of res ipsa loquitur. The specific acts of negligence charged against Deputy Dupin and the other members of the Sheriff's Department cover charges such as inadequate and improper supervision, including failure to provide enough life guards with proper training to handle the number of youths swimming. The deputies are also charged with inadequate inspection of the swimming area, failure to determine that the area was safe for swimming or to make the area safe, and failure to properly handle and care for Terry Sonnier once he was hurt.
The defendants raised the affirmative defense of contributory negligence and assumption of the risk.

ACTION IN THE TRIAL COURT
At the close of the plaintiff's case in chief the trial judge granted a directed verdict in favor of defendants Adams, Jordan and Morgan. The jury returned a special verdict form in which it answered interrogatories as to Melvin Dupin and Kenneth Potts. In the interrogatories the jury was asked to answer whether the two deputies were negligent and, if so, was the negligence a legal cause of the accident and injuries? The jury answered negatively as to both deputies. Therefore, the jury either found the deputies not negligent, or if they were negligent, the jury found their negligence was not a legal cause of the accident.
The State of Louisiana was tried before the judge alone. The trial court gave judgment for the State and against plaintiffs. In a memorandum opinion the trial court stated that Terry Sonnier was barred from recovery from the State "because he assumed the risk of injury and because he was guilty of negligence which was a legal cause of his accident and injuries."

SPECIFICATION OF ERRORS
Plaintiffs list the following specifications of errors:
I. The jury was manifestly in error in determining that Deputies Dupin and Potts were not negligent or that their negligence was not the legal cause of the plaintiff's injuries.
II. The trial court was manifestly in error in determining that plaintiff was contributorily negligent or assumed the risk of his injuries and that his recovery was thereby barred.
Plaintiffs make no complaint of the dismissal of Deputies Adams, Jordan and Morgan, through directed verdict, and the trial court's findings in releasing them appear proper under the appropriate standard governing directed verdicts.

NEGLIGENCE OF DEPUTIES DUPIN AND POTTS
We will first address ourselves to the question of negligence of the deputies. The essence of plaintiff's argument on appeal is that "boys will be boys;" and that the deputies owed a duty to the Explorer Scouts to discover that they were diving in shallow water where the creek bottom could not be seen and to stop their further diving.
At this point it should be observed that the record does not disclose any indication that diving or jumping into the creek was ever contemplated prior to the time the Explorers began to do so. In fact Dupin had instructed the assembled group before they went in swimming that they were not to run and jump in the water in order to avoid injury from unexpected objects in the water. Although the Explorers state that they were given permission to swim outside the roped-off area, no one states they asked permission to dive. In our view however, whether Deputy Dupin gave permission to the Explorers to go beyond the roped-off area is not dispositive. Apparently there were no diving facilities such as diving boards or piers.
The crucial issue in the case is the evident danger in diving at the place where the *1375 Explorers were doing so. No argument disputing this is made. Plaintiff bases his case on this danger. All the Explorers fully appreciated the danger in jumping and diving off the clay bank ledge of the creek into the water. It is clear that each of the Explorers, some seven in number, who were jumping and diving fully understood that this was unreasonable conduct in the practical and in the legal sense. As the testimony of the Explorers indicates, prior to Terry's second dive everyone had avoided diving too deeply or had jumped in feet first, as Explorer Joseph Philip Rubit did. Hence, the question is whether Deputies Dupin and Potts owed a duty to the Explorers to anticipate that they would ignore the danger by engaging in such unreasonable conduct and whether therefore the Deputies should have prevented it; or once it had begun, whether the Deputies should have discovered it and put a stop to it. It is the essence of plaintiff's argument that such a duty was owed.
From our study of the record we agree that the water safety procedures in force at the time of Terry Sonnier's accident could be criticized. We might conclude, for example, that someone should have been stationed as a life guard on the upper bank of Bundicks Creek to observe all areas of the creek occupied by participants in the outing. Conceivably a person so stationed would have seen Terry and the other Explorers diving and might have stopped them until the safety of diving in that part of the creek was determined. Plaintiff's argument assumes that someone in the capacity of a life guard or monitor would have stopped the diving and thereby would have protected Terry Sonnier from taking the risks he incurred. In short, we may conjecture that had stricter measures been adopted, someone might have done what plaintiff argues should have been done, that is, that someone in authority should have stopped Terry Sonnier from doing what he evidently well knew he should not do.
The failure of the Deputies to prevent Terry Sonnier from hurting himself by ordering a halt to the diving is the only negligence of which he complains. We note that the failure to give warnings concerning diving in shallow water is not a significant factor in the case inasmuch as Terry and all the other Explorers indicated they were fully aware of the danger in diving in unfamiliar waters and therefore needed no warning. Likewise, the possible inspection of the area and discovery of the shallowness of the water is not a significant factor inasmuch as Terry and the other Explorers were aware the water was shallow. See Knott v. Williams, 109 So.2d 517 (La.App. Orl.1959) and Rivere v. Thunderbird, Inc., 353 So.2d 346 (La.App. 1st Cir. 1977), cert. denied, 354 So.2d 1380 (La.1978). Therefore, if we assume without so holding that any of the defendants were guilty of negligence which was a legal cause of Terry's accident, plaintiff's recovery is barred by the contributory negligence of Terry Sonnier and his assumption of the risk which were legal causes of the accident.
Terry must have known of the shallowness of the water in which he was diving. He fully understood and appreciated the dangers and risk to which he exposed himself. At the time of his accident he was sixteen years old and apparently of average intelligence and judgment for his age. He was an experienced swimmer who began to swim at about eight years of age. He had been taught basic rules of safety concerning swimming and diving. Terry testified he knew that if one dived in shallow water in swimming pools he should dive straight out. Terry's own testimony shows his complete understanding, appreciation and acceptance of the extreme risk he took in diving in water he knew to be shallow where he could not see the bottom.
In our opinion Terry Sonnier was guilty of both assumption of risk and contributory negligence which barred his recovery for his damages. Dofflemeyer v. Gilley, 384 So.2d 435 (La.1980); Rivere v. Thunderbird, Inc., supra; Knotts v. Williams, supra, and Liedtke v. Allstate Ins. Co., 405 So.2d 859 (La.App. 3rd Cir. 1981), writ denied, 407 So.2d 748 (La.1981).
*1376 In the pleadings and in the evidence adduced, plaintiff contended the deputies did not properly handle Terry Sonnier after he received his injury in view of the indication that he might have sustained a spinal injury. This point has not been pressed by plaintiff in his brief. In any event, the burden of proof on this issue had not been borne by plaintiff. Terry was pulled out of the water onto the creek bank by his older brother and others. Thereafter, it seems that reasonable measures were adopted by the deputies. Finally, it would be speculative to assume that any handling of Terry Sonnier after he hit the creek bottom caused his injury or aggravated it. On that point there is no proof.

NEGLIGENCE OF THE STATE
In his brief plaintiff has not pursued his charge of negligence against the State. Insofar as the State might be liable under the doctrine of respondeat superior as the alleged employer of the deputies, plaintiff's claim is rejected for the reasons given above. No specific evidence was presented to establish negligence on the part of the State relative to its alleged ownership and operation of the Bundicks Lake area as a resort or recreation area. If the State was negligent as alleged for its failure to have life guards on hand, the contributory negligence and assumption of risk of Terry Sonnier would bar recovery. However, the record does not establish whether or not the contemplated use of the area in question was such that the State owed a duty to provide life guards at the area.
We conclude that the trial court was not clearly wrong in holding that Terry Sonnier was guilty of contributory negligence and assumption of risk which barred recovery by plaintiffs.

RES IPSA LOQUITUR NOT APPLICABLE
Plaintiffs pleaded that the doctrine of res ipsa loquitur was applicable in this case. Although plaintiff's recovery is barred in any event, the doctrine is not applicable. The event or events which resulted in Terry Sonnier's injury are known. There is no occasion to resort to the doctrine.

CONCLUSION
For the foregoing reasons we affirm the judgment of the trial court. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[1] Henry A. Reid, Jr., The Sheriff of Calcasieu Parish, was later dismissed as a defendant. The insurers which went to trial were The North River Insurance Company and International Supplies Insurance Company. Holland American Insurance Company was dismissed prior to trial. The Calcasieu Parish Police Jury was dismissed on a motion for summary judgment.
[2] Mrs. LeDee was not listed as an appellant in the written motion for appeal to this court. In view of our affirmance of the trial court's judgment, the failure of Mrs. LeDee to appeal does not present an issue.