CULPEPPER, Judge Pro Tem.
This is a suit for damages incurred when the 40-foot trawl net of “Shrimp Boat Silver Fox” became entangled in debris on the floor of the Gulf of Mexico. Judgment was rendered against defendant, Texas Gulf, Inc., in the amount of $15,451.60 for damage to the vessel’s trawls, expenses incurred in disentangling the boat, and a loss of profits. Texas Gulf appeals. We reverse.
The issues are: (1) Can res ipsa loquitur be applied to create a presumption that it was Texas Gulf’s debris? (2) Did plaintiff prove it was Texas Gulf’s debris?
*764 GENERAL FACTS
The accident occurred on August 17, 1979 in an area of the Gulf of Mexico identified as East Cameron Block 129. The trawls being used by the “Silver Fox” snagged on an underwater object at a depth of about 76 feet. The captain’s efforts to disentangle the net were unsuccessful. Divers hired by plaintiff cut the boat loose, and a portion of the object on which the nets were hung was raised to the surface. One of the divers described the object as a pipe structure made of about 42-inch pipe. He indicated that a piece of stairway approximately 30 feet long and four feet wide was still caught in the net.
The captain of the “Silver Fox” testified that a portion of the snag which was pulled almost to the surface appeared to be a helicopter landing pad from an oil rig. Pieces of iron remained in the net after it was cut loose on the afternoon of August 22. A piece of this debris, described as metal grating, was at one time in the possession of Jim Watkins who managed the operation of the “Silver Fox.” Mr. Watkins testified at trial that the piece of metal grating had been misplaced and could not be located.
Operations to cut the “Silver Fox” loose from the snag were delayed due to the weather which was described by the captain as “squally.” The captain also attributed to weather conditions the fact that his boat drifted more than 500 feet while still hung up.
The evidence shows that two companies, Kerr-McGee and Texas Gulf, had conducted drilling operations in East Cameron Block 129. The location of these drilling operations and the snag which caused the damage were determined with considerable accuracy by the use of the Lorán C system of navigation. The well drilled by Kerr-McGee, which was plugged and abandoned in 1972, is located approximately 5,990 feet east of the point where the snag occurred. The Texas Gulf wells No. 1 and No. 4 were shown to be 4,311 feet and 671 feet, respectively, east of the snag. These wells were plugged and abandoned in the summer of 1978.
Suit was initially filed by Jim Watkins, d/b/a S/B Silver Fox against Kerr-McGee and Texas Gulf. Because Jim Watkins only manages the operations of the boat, the owner, Hat III, Inc., was substituted as the proper party plaintiff. Both defendants filed third party demands against the companies with whom they had contracted to salvage and dispose of their drilling platforms and equipment.
Kerr-McGee and its third party defendant were dismissed on a motion for summary judgment which was unopposed by the plaintiff. The third party demand filed by Texas Gulf was severed from the main demand and is not at issue before us.
APPLICATION OF RES IPSA LOQUITUR
There is no question that someone was negligent in leaving this debris in the Gulf. The issue is who left it there. The trial court applied the doctrine of res ipsa loqui-tur to infer a presumption that Texas Gulf left the debris there when it drilled its wells in 1978. We conclude res ipsa loqui-tur cannot be applied for this purpose.
Generally, the doctrine of res ipsa loquitur (the thing speaks for itself) is a rule of evidence, which creates a presumption of negligence by the defendant where it has been proved by a preponderance of the evidence, either direct or circumstantial, that the instrumentality which caused the injury was in the defendant’s exclusive possession, and that the accident was one which ordinarily does not occur in the absence of negligence. Res ipsa loquitur is not applied to create a presumption that it was defendant’s instrumentality which caused the injury. This must be proved by a preponderance of the evidence, either direct or circumstantial. Prosser, Law of Torts, 4th Ed., Ch. 6, sec. 39, at pg. 218, explains:
“It is never enough for the plaintiff to prove merely that he has been injured by the negligence of someone unidentified. Even though there is beyond all possible *765 doubt negligence in the air, it is still necessary to bring it home to the defendant. On this too the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where it is clear that it is at least equally probable that the negligence was that of another, the court must direct the jury that the plaintiff has not proved his case. The injury must either be traced to a specific instrumentality or cause for which the defendant was responsible, or it must be shown that he was responsible for all reasonably probable causes to which the accident could be attributed .... ”
One of the leading cases from our Supreme Court on res ipsa loquitur is Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (La.1972), in which a fire of unknown cause started in the kitchen of defendant’s restaurant and spread to an adjoining apartment building where plaintiffs father was found suffocated by the smoke. The facts showed clearly that the decedent was killed as a result of the fire which originated in defendant’s kitchen, but the cause of the fire was not proved by direct evidence. The trial court and the intermediate court of appeal held the plaintiff had not proved by a preponderance of the circumstantial evidence that defendant’s negligence caused the fire, other reasonable causes being vandalism, combustion, electrical malfunction, etc. In reversing, our Supreme Court applied the doctrine of res ipsa loquitur to infer negligence of the defendant as the most plausible explanation for the fire, rather than some other possible cause. In Boudreaux, there was no question that the instrumentality which caused the injury, i.e., the kitchen and its employees and equipment, was under the exclusive control of the defendant, and, of course, a fire does not ordinarily start in a kitchen, in the absence of negligence on the part of someone. Thus, the court applied res ipsa loquitur to infer negligence by the defendant.
Another example of the type of case in which our Supreme Court has applied res ipsa loquitur, is McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La.1973) in which plaintiff alleged that his son was taken into the operating room of the hospital for surgery on his injured elbow, and that when he came out of surgery he had received new injuries to his leg and his reproductive organs. Plaintiff did not know the cause of the new injuries. Even though there were multiple defendants, our Supreme Court applied the doctrine of res ipsa loquitur in overruling an exception of no cause of action. From these facts the court inferred negligence on the part of defendants. As in Boudreaux, supra, there was no question in McCann that the instrumentalities which caused the injury, i.e., the surgeons, nurses, equipment, etc., were under the control of the defendants, and that the injury was one which ordinarily would not have occurred in the absence of negligence. In both Boudreaux and McCann, res ipsa loquitur was applied to infer negligence by the defendant, where the cause of the injury had not been proved by a preponderance of direct evidence. In McCann, our Supreme Court states with citation of authority that “Res ipsa loquitur is, of course, irrelevant when a body of direct evidence is available explaining the activity leading to the injury.” See also Sonnier v. Dupin, 416 So.2d 1371 (La.App.3d Cir.1982), writ denied, 420 So.2d 984 (La.1982).
In the present ease, unlike Bou-dreaux and McCann, the direct evidence shows the cause of the damage, i.e., that plaintiff’s net snagged on debris which someone negligently left on the floor of the Gulf. The question is whose debris was it? Res ipsa loquitur cannot be applied to answer this question. The plaintiff must prove it by a preponderance of the evidence.
For the reasons stated above, we conclude the doctrine of res ipsa loquitur is not applicable.
PROOF IT WAS TEXAS GULF’S DEBRIS
The next issue is whether plaintiff proved by a preponderance of the evidence *766 that the debris was left on the floor of the Gulf by Texas Gulf. There is no direct evidence. The evidence is only circumstantial. Thus plaintiffs burden was to exclude with a fair amount of certainty any reasonable hypothesis, but that it was Texas Gulfs debris. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (La.1971).
Plaintiff relies principally on the close proximity of the Texas Gulf wells and the absence of any other well closer than 5,990 feet, almost one nautical mile. Without commenting on the correctness of the motion for summary judgment granted in favor of Kerr-McGee, we note that many of the same reasons presented by Kerr-McGee in support of its motion are equally applicable to the conclusion that the plaintiff has not proved Texas Gulfs liability by a preponderance of the evidence. The only real distinctions between the wells drilled by Kerr-McGee and Texas Gulf are their location and the length of time which has passed since abandonment. Although Texas Gulf appears to be the only party entitled to conduct drilling operations in East Cameron Block 129, that area is not subject to Texas Gulfs exclusive control. Other parties may have crossed the East Cameron Block 129 carrying equipment necessary for the placement or removal of an oil rig. Debris could have been negligently or intentionally disposed of in East Cameron Block 129 by any party not necessarily a lessee of that block. Considering the evidence presented at trial, this explanation is as likely as the one presented by plaintiff that Texas Gulf is responsible for the debris.
Apparently, the trial judge also found the proof insufficient to show it was Texas Gulfs debris. He therefore applied a res ipsa presumption and made the following statements:
“When the plaintiff is in a situation where he is hampered by proving his case because of exclusivity or proximity between the defendant and the means of proof, then it switches the burden of proof, once the plaintiff reaches a certain level or made out a prima facie case . The defendant is in a much better position to find out unquestionably whether or not defendant was the perpetrator guilty of leaving this debris. It could be discovered several ways. The best thing to do would be to hire a diver and find out exactly where it came from, and then they could find the real culprit. The shrimper who finds himself victimized by this debris is not in a position to do so. So once he proves that it’s oil field equipment and it has some reasonable connection with a local operation, here just a few hundred feet, I think the burden of proof has shifted. Then the question is has the defendant carried its burden.”
We cannot agree with this reasoning by the trial judge. As previously stated, Texas Gulf did not have exclusive control over the area in which the debris was found. Plaintiff could have just as easily hired a diver and attempted to identify the debris on which the net hung. In fact, a portion of the debris was at one time in the possession of Jim Watkins, manager of the boat operations, but was inexplicably lost. Under the circumstances, we can only conclude that plaintiff has failed to prove that Texas Gulf is the party responsible for leaving the debris on the floor of the Gulf.
Accordingly, the judgment in favor of plaintiff Hat III, Inc., d/b/a S/B Silver Fox, and against Texas Gulf, Inc. is reversed, and judgment is hereby rendered in favor of Texas Gulf, Inc., dismissing plaintiffs claim. All costs in the trial and appellate courts are assessed to plaintiff-appel-lee.
REVERSED AND RENDERED.