John R. ASHLEY, Plaintiff,

v.

GOODYEAR TIRE AND RUBBER CO.,
Defendant–Third Party
Plaintiff–Appellee,

v.

BETHLEHEM STEEL CORPORATION,
Third Party Defendant–Appellant.

No. 78–1565.

United States Court of Appeals,
Sixth Circuit.

Argued July 1, 1980.

Decided Dec. 11, 1980.

Rehearing and Rehearing En Banc
Denied Jan. 26, 1981.

Wallson G. Knack, David W. Crooks, Warner, Norcross & Judd, Ernest M. Sharpe, Grand Rapids, Mich., William B. Mallin, Pittsburgh, Pa., for third party defendant–appellant.

Buford A. Upham, Wheeler, Upham, Bryant & Uhl, Grand Rapids, Mich., for defendant–third party plaintiff--appellee.

Before MERRITT, BROWN and JONES, Circuit Judges.

BAILEY BROWN, Circuit Judge.

This appeal arises from a third party action brought by Goodyear Tire & Rubber Company (Goodyear) against Bethlehem Steel Corporation (Bethlehem). The third party action derives from a personal injury action, which arose as a result of the failure of a defective wheel rim manufactured by Goodyear with steel supplied to it by Bethlehem. The plaintiff in the principal action was awarded a verdict of $459,500 by a jury against Goodyear, which had filed a third party complaint against Bethlehem seeking indemnity or contribution. The district court heard Goodyear's third party action against Bethlehem, as a bench trial, concurrently with the jury trial and awarded contribution (i. e. half of the judgment obtained by the plaintiff) to Goodyear but denied indemnification. Bethlehem appeals from the district court's award of contribution to Goodyear, and Goodyear appeals from that portion of the trial court's decision denying to it indemnification. Goodyear's appeal of the personal injury judgment was heard with the instant appeal, and the judgment has heretofore been affirmed by an order. We now affirm the granting of contribution and the denial of indemnification.

On June 19, 1972, John R. Ashley was injured while changing a tire of an R–50 dump truck, a large earthmoving vehicle, which has two tires on each side of the rear axle. Attempting to repair the inside tire of the dual tire assembly, Ashley removed the lug nuts and wedges from the outside tire. As he loosened the outside tire, the inside wheel and rim assembly, no longer held in place by the outside tire, exploded. The gutter section of the inside rim split into two pieces and the force of the resultant explosion propelled the outside tire against Ashley, injuring him severely.

On December 1, 1972, Ashley filed suit against Goodyear, alleging, *inter alia*, that his injuries were due to defects in the rim and in the steel from which it was made. Twenty--two months later, in October, 1974, Bethlehem was served with a third party complaint in which Goodyear claimed the right to indemnity or contribution from Bethlehem. As stated, Goodyear was denied indemnity but awarded contribution, and this decision is supported by a full and careful opinion, findings and conclusions by the district court, Honorable Wendell A. Miles.

At trial, expert testimony established that the explosion of the inner wheel assembly was caused by metal fatigue, more particularly by the presence of laps and seams

in the steel rim. Laps and seams arise periodically during the steel manufacturing process, and cannot be totally eliminated. A lap is a folding over of a portion of the steel during the rolling process, and the seam is the surface indication of a lap. Presence of laps and seams in the raw steel, or in the finished wheel rim, can be discovered by gross visual inspection.

Bethlehem and Goodyear knew that laps and seams were sometimes present in the steel manufactured for Goodyear. Consequently, each instituted testing and inspection procedures designed to discover these defects. Bethlehem's testing procedures included periodic sampling and testing of certain lots, and a final visual inspection of each piece of steel. When laps or seams were discovered, the defective steel was removed from the line and further testing was conducted to determine the prevalence of laps and seams in other steel designated for Goodyear.

When the steel arrived, Goodyear visually and dimensionally tested the samples submitted with the lots of steel supplied by Bethlehem. A quality control man removed two or three gutter sections from the line each shift, subjecting these to a dimensional and visual inspection. Goodyear, when it discovered laps and seams in Bethlehem steel, had the option to reject the steel, have it shipped back to Bethlehem at no cost, and receive nondefective steel. Goodyear would contact a Bethlehem representative who would come to the Goodyear plant. Apparently, the representatives of the two companies would confer and decide whether the steel would be repaired or whether it would be scrapped. Bethlehem never disallowed a claim, however, when Goodyear discovered laps or seams. Goodyear also had an opportunity to discover laps and seams during the manufacture of the rims. The gutter section provided by Bethlehem would be bent into a circle and butt welded. The circular section was then stretched or shrunk to form a perfect circle. There is some evidence in the record to indicate that laps and seams were more easily discoverable during this process. Personnel along the Goodyear line were alerted to the possibility of laps and seams in Bethlehem steel and alerted as to the importance of detecting them. Finally, Goodyear subjected each rim at the end of the line to a visual inspection.

Turning first to the issues presented by Goodyear on this appeal, the court agrees with the holding of the district court that any remedy Goodyear might have had under the Uniform Commercial Code, M.C. L.A. §§ 440.1101 *et seq.* (Supp.1979), on the basis of breach of implied and express warranties is foreclosed because it failed to notify Bethlehem within a reasonable time as required by section 2–607(3)(a) of the Code, which provides:

> (3) Where a tender has been accepted
> (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify seller of breach or be barred from any remedy.

M.C.L.A. § 440.2607(3)(a) (Supp.1979). The record clearly establishes that Goodyear knew of the consequences that could obtain when a rim is manufactured from steel containing laps and seams. Its inspection procedures and its warnings to its employees leave no doubt about this. The court agrees that, because the initial complaint alleged, *inter alia,* that the rim was made of defective material and contained metal defects, Goodyear was certainly then put on notice of its possible breach of warranty claim against Bethlehem. Indeed, it seems that, since the presence of laps and seams was discoverable upon visual inspection, Goodyear arguably "should have discovered" the breach when the defective rim came off its line. In any case, as stated, Goodyear had notice of the breach of warranty claim not later than the filing of the personal injury action, and its contention that it had no notice of a possible breach of warranty claim against Bethlehem until some time after such complaint was filed is unsupportable.

Goodyear also claims that the twenty–two month delay from the time the complaint was filed until Bethlehem was notified was not unreasonable, contending that

the consumer standard of reasonableness should apply instead of the more stringent commercial standard utilized by the trial court. Official Comment 4 to Section 2–607 of the Code provides in part:

4. The time of notification is to be determined by applying commercial standards to a merchant buyer. "A reasonable time" for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.

M.C.L.A. § 440.2607 (Supp.1979) (Official Comment 4). Goodyear is a "merchant buyer" and commercial standards are properly applied to it, as was determined by the district court, notwithstanding the fact that Goodyear's damages arise from liability imposed on it in a personal injury action. Further, the court rejects, as did the district court, Goodyear's argument that no delay under Section 2–607(3)(a) can be unreasonable without a showing of prejudice. Goodyear offers no authority for this proposition and the court has found none. Still further, many courts have held delays of much less than twenty–two months unreasonable as a matter of law. *See* Annot., 93 A.L.R.3d 363, 387–403 (1979). Here, the trial court's finding that Goodyear failed timely to notify Bethlehem is clearly correct.

The district court determined, supported by substantial evidence, that, while Bethlehem was not negligent in manufacturing this defective piece of steel, it was negligent in failing to discover the defect and in failing to warn Goodyear.[1] The foreseeability of harm to one in the position of Ashley is discussed *infra*.

■ On the issue of indemnity under the law of torts, Goodyear argues that its negligence was passive as opposed to active, and

it should be allowed indemnification. The court, however, agrees with the district court's holding that Goodyear's failure to discover the defect was just as "active" as Bethlehem's failure to discover the defect. Both knew of the possibility of the presence of laps and seams and both instituted test and inspection procedures to detect them. Each breached the same duty to discover the defect that was ascertainable upon visual inspection. Thus, Goodyear's claim for indemnity is without merit.

■ With respect to the issue of contribution, the court agrees with the holding of the district court that Ashley's injuries were proximately caused by the concurrent negligence of Goodyear and Bethlehem.

■ Bethlehem argues that it breached no duty, but this position is untenable. The Michigan Supreme Court has stated:

Foreseeability of any harm is one of the factors a jury may consider in determining if the defendant acted reasonably under all the circumstances. Such a determination can best be made by considering only those facts existing up to the time of the injury–should the defendant have reasonably foreseen that what he was doing or had done up to then might cause harm–if so he was negligent.

*Davis v. Thornton*, 384 Mich. 138, 146, 180 N.W.2d 11, 15 (Mich.1970). The district court held, and we agree, that Bethlehem could reasonably have foreseen that harm might befall persons in the position of Ashley and other users of rims containing laps and seams. The failure to prevent this unfortunate result by conducting its inspections with due care, the district court found, was negligence, and such finding was supported by substantial evidence.

■ Goodyear's negligence in failing to detect the defective steel does not relieve Bethlehem of its responsibility, for as the Michigan Supreme Court has stated:

did not specifically proscribe steel with laps and seams, but it is clear, as we have pointed out, that Goodyear and Bethlehem considered that such steel was defective for use by Goodyear in making rims for heavy duty earthmoving vehicles.

---

1. Bethlehem argues that it was not so guilty of negligence vis–a–vis the injured plaintiff, or in any event could not be liable to Goodyear in tort for indemnity or contribution, because steel supplied to Goodyear with laps and seams was not in breach of Goodyear's specifications. It does appear that Goodyear's specifications

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, * * *.

*Comstock v. General Motors Corporation*, 358 Mich. 163, 99 N.W.2d 627, 635 (Mich. 1958) (quoting from Section 447 of the Second Restatement of Torts).

Because, as the district court found, Bethlehem was notified that laps and seams were periodically discovered along the Goodyear production line, it was aware that laps and seams could elude a visual inspection, even though a careful inspection would detect these defects. Thus, Bethlehem's negligence was a substantial factor in bringing about the harm to Ashley, and Goodyear's negligence did not serve as a superseding intervening cause that would relieve Bethlehem of liability. Goodyear and Bethlehem are joint tortfeasors and the Michigan contribution statute was properly applied.[2] The district court's holding that Bethlehem is liable to Goodyear for one-half of the judgment rendered is not error.

The court has considered the other arguments of the parties and concludes they are without merit.

Accordingly, the judgment of the district court is AFFIRMED.

**2.** The Michigan contribution statute applicable to this case provides in part:

(1) Whenever a money judgment has been recovered jointly against 2 or more defendants in an action for bodily injury or death resulting therefrom, or property damage, and such judgment has been paid in part or in full by 1 or more of such defendants, each defendant who has paid more than his own pro rata share is entitled to contribution with respect to the excess so paid over and above the pro rata share of the defendant or defendants making such payment. Joint tort-feasors who are summoned in as third party defendants pursuant to court rule may likewise be liable for contribution. No person may be compelled to pay to any other defendant an amount greater than his pro rata share of the entire judgment.

M.C.L.A. § 600.2925(1) *superseded* by M.C.L.A. § 600.2925a(1) (Dec. 15, 1974) (applicable to torts committed on or after January 1, 1975).