RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0118p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

CARHARTT, INC.,

*Plaintiff-Appellant*,

*v.*

INNOVATIVE TEXTILES, INC.; INNOVATIVE TEXTILES, LLC,

*Defendant-Appellee*.

No. 20-1826

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:17-cv-13604—Judith E. Levy, District Judge.

Argued: April 27, 2021

Decided and Filed: May 27, 2021

Before: SUTTON, Chief Judge, CLAY and McKEAGUE, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Phillip J. DeRosier, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellant. Trent B. Collier, COLLINS EINHORN FARRELL PC, Southfield, Michigan, for Appellees. **ON BRIEF:** Phillip J. DeRosier, DICKINSON WRIGHT PLLC, Detroit, Michigan, for Appellant. Trent B. Collier, COLLINS EINHORN FARRELL PC, Southfield, Michigan, for Appellees.

─────────────────

## OPINION

─────────────────

McKEAGUE, Circuit Judge. Carhartt sued its fabric supplier, Innovative Textiles, for breach of contract and breach of warranty, among other claims, after discovering alleged defects

in Innovative's flame-resistant fabric. The sole issue on appeal is whether Carhartt failed to notify Innovative of the alleged breach within a reasonable time after Carhartt should have discovered the breach. The district court granted summary judgment to Innovative, holding that Carhartt was barred from seeking any remedy under Michigan's Uniform Commercial Code § 440.2607(3) because Carhartt's notification was too late. Because reasonable minds could differ as to whether Carhartt should have discovered the breach sooner—whether Carhartt should have been performing regular, destructive fire-resistance testing on the fabric it received from Innovative—we **REVERSE** and **REMAND** for a jury to decide this question.

**I.**

Innovative Textiles, Inc. and Innovative Textiles, LLC (Innovative)[1] develop flame-resistant fabrics using modacrylic fibers, which are fibers that contain flame-retardant properties. In 2009, Carhartt contracted with Innovative to create a flame-resistant fleece fabric for use in its line of flame-resistant garments. The fabric that Innovative developed for Carhartt was called "Style 2015," and it contained a modacrylic fiber called "Protex-C."

Innovative agreed that it would conduct flame-resistance testing on the Style 2015 fabric before shipping it to Carhartt. Specifically, Innovative agreed to use the industry standard vertical flame-resistance test, ASTM D6413, which analyzes the amount of time a flame remains visible on the fabric and the length of fabric destroyed by the flame. Additionally, Carhartt sent Innovative emails in 2008, 2010, 2011, 2012, and 2013 stating that Carhartt would do "regular, random testing on the product that is received in [its] distribution center."

Carhartt performed visual inspections on the Style 2015 fabric to identify any apparent physical defects, but it did not conduct flame-resistance testing until June 2016. The Style 2015 fabric failed the D6413 flame-resistance test. Carhartt notified Innovative, who then conducted its own testing and concluded that Style 2015 fabrics dating back to the 2014 shipments did not pass flame-resistance testing.

---

[1]Innovative Textiles, Inc. transferred all its assets to Innovative Textiles, LLC in 2015. Innovative states that "[t]he distinction between these companies is not relevant to this appeal." This opinion refers to both entities collectively as "Innovative."

While investigating the cause of the test failures, Carhartt discovered that, in 2013, Innovative stopped using Protex-C and began using a different modacrylic fiber called F-12. Innovative did not notify Carhartt that it started using the F-12 fiber. Carhartt claims that the fiber change caused the fabric to become defective, and points to tests that Innovative performed on the fabric after switching to the F-12 fiber. Innovative disputes this and alleges that the test failures were due to other issues with the fabric, not the F-12 fiber.

In 2017, Carhartt sued Innovative for (1) breach of contract, (2) breach of express and implied warranties, (3) negligence, (4) fraud and misrepresentation, (5) silent fraud, (6) innocent misrepresentation, and (7) false advertising. Innovative then filed a third-party complaint against Gentry Mills, Inc., a subcontractor involved in its fabric production process, but the district court granted summary judgment in Gentry Mills' favor, and Innovative does not appeal that ruling. In February 2020, the district court granted summary judgment in favor of Innovative as to Carhartt's negligence, fraud, misrepresentation, and false advertising claims. Carhartt does not appeal that ruling.

The parties then filed cross motions for summary judgment on the remaining breach of contract and warranty claims. The district court granted Innovative's motion for summary judgment, reasoning that Carhartt did not notify Innovative of the suspected breach within a reasonable amount of time after Carhartt should have discovered the defect, as required by Article 2 of Michigan's Uniform Commercial Code (UCC), and therefore was barred from seeking any remedy.[2] Carhartt now appeals that decision.

**II.**

We review a district court's grant of summary judgment de novo, "viewing all the evidence in the light most favorable to the nonmoving party and drawing 'all justifiable inferences' in his favor." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case

---

[2]The court held that Carhartt could pursue breach of contract and warranty claims for shipments it received after May 1, 2016, but the parties agreed that Carhartt did not receive any fabric from Innovative after that date.

to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014).

**A.**

Under Article 2 of Michigan's UCC, when a buyer accepts a tender of goods, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Mich. Comp. Laws § 440.2607(3)(a). Reasonableness depends on the "nature, purpose, and circumstances of the action." Mich. Comp. Laws § 440.1205(1); *see also Kelynack v. Yamaha Motor Corp.*, 394 N.W.2d 17, 20 (Mich. Ct. App. 1986). "Whether a reasonable time has elapsed is generally a question for the trier of fact," *Bev Smith, Inc. v. Atwell*, 836 N.W.2d 872, 879 (Mich. Ct. App. 2013), but if reasonable minds could not differ, the question of what constitutes a reasonable time may be decided as a matter of law, *Comput. Network, Inc. v. AM Gen. Corp.*, 696 N.W.2d 49, 58 (Mich. Ct. App. 2005).

Usually when a case arises under our diversity jurisdiction we look to the substantive state law as prescribed by the state's highest court. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). But the Michigan Supreme Court has not addressed the precise issue in this case, so instead we are tasked with "predict[ing] how [the court] would resolve the issue from 'all relevant data,'" including decisions of the state appellate courts. *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (quoting *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985)).

The relevant data here is sparse. The only authority to address what constitutes a reasonable time under § 440.2607(3)(a) is a Michigan Court of Appeals case, *Bev Smith, Inc. v. Atwell*, 836 N.W.2d 872 (Mich. Ct. App. 2013). There, the plaintiff bought what he believed to be a "real and authentic" racecar that once belonged to legendary drag racer Dave Strickler. *Id.* at 876. A year after the sale, the plaintiff learned that the car had a "donor body" and was not the real racecar. *Id.* at 877. The Michigan Court of Appeals held, as a matter of law, that one year wasn't a reasonable amount of time under § 440.2607(3)(a). *Id.* at 882.

Innovative urges us to treat *Bev Smith* as controlling and hold that because Carhartt did not notify Innovative of the breach within a year, its notice was not reasonable. But Innovative overlooks the fact that *Bev Smith* dealt with an apparent and easily discoverable defect. Looking at the "nature, purpose, and circumstances of the action," the Michigan Court of Appeals held that the plaintiff "should have discovered any alleged breach of contract relating to the authenticity of the [car] shortly after purchasing it," *Bev Smith*, 836 N.W.2d at 882, because the evidence "overwhelmingly establishe[d] that the replacement body and parts would have been easily discoverable upon inspection of the vehicle" and that there was "no evidence to indicate that the vehicle's alleged inauthenticity was latent or otherwise hidden from plaintiff's view," *id.* at 881; *see also id.* ("[P]laintiff easily could have discovered any problems related to the vehicle's genuineness . . . ."); *id.* at 882 ("[Q]ualities that are apparent . . . reasonably should be inspected and complained of soon after the goods . . . have been delivered . . . ." (quoting *P & F Constr. Corp. v. Friend Lumber Corp. of Medford*, 575 N.E.2d 61, 64 (Mass. App. Ct. 1991)) (second, third, and fourth alterations in original)).

Here there is no evidence that the defect in Innovative's fabric was easily discoverable by mere visual inspection. In fact, Carhartt did perform visual inspections on the Style 2015 fabric to identify any apparent physical defects, such as shrinkage, weight, and coloration issues. None of those inspections, however, revealed that the fabric was not flame-resistant. Instead, the defect in Innovative's fabric was hidden from Carhartt's view.

In sum, *Bev Smith*'s holding—that a plaintiff has not given reasonable notice as a matter of law when they are put on notice of an obvious, apparent defect, but do not notify the seller until a year after the sale—is not controlling in this case. *See also Ashley v. Goodyear Tire & Rubber Co.*, 635 F.2d 571, 573 (6th Cir. 1980) ("[S]ince the presence of laps and seams was discoverable upon visual inspection, [the plaintiff] 'should have discovered' the breach when the defective rim came off its line . . . .").

Innovative has not presented us with any Michigan case law that defines what constitutes reasonable notice for latent defects.[3]  And neither of the parties has submitted evidence on what the industry custom is on testing products for latent defects.  *See, e.g.*, *Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc.*, 461 F. Supp. 3d 531, 542 (E.D. Mich. 2020) (considering the express terms of the agreement, course of performance, and custom, usage, and trade practices to determine whether a breach of contract occurred).

Without more, we cannot hold as a matter of law that Carhartt did not notify Innovative of the defect within a reasonable time.  It is possible that Carhartt should have conducted the fire-resistance tests earlier.  But reasonable minds could differ on that conclusion—so it is a question for a jury.

**B.**

Innovative's remaining arguments are unpersuasive.  First, Innovative argues that *Bev Smith* imposes a duty on buyers to hire an expert "if necessary to assess a product's compliance with the buyer's specifications," and because Carhartt did not hire an expert, it loses as a matter of law.  Appellee Br. 25-26 (citing *Bev Smith*, 836 N.W. 2d at 881 ("[P]laintiff easily could have discovered any problems related to the vehicle's genuineness at the outset, by means of an inspection or an expert appraisal.")).  But Innovative reads *Bev Smith* too broadly.

*Bev Smith* dealt with a unique and narrow set of facts: the authenticity of an antique vehicle.  The purpose of the transaction was to obtain Dave Strickler's original racecar, so the court found it unreasonable that the buyer did not hire an expert because it was "beyond dispute that any lack of authenticity would have been 'readily apparent to the trained eye of an [automotive] expert.'"  *Bev Smith*, 836 N.W.2d at 881 (alteration in original) (quoting *Rosen v. Spanierman*, 894 F.2d 28, 32 (2d Cir. 1990)).  But the latent defect in Innovative's fabric would not have been "readily apparent" to an expert by simply looking at the fabric.  The expert would

---

[3]Innovative cites this Court's decision in *679637 Ontario Ltd v. Alpine Sign & Printer Supply, Inc*, where we held that a plaintiff who had notice of a potential defect for three years before alerting the seller did not give notice within a reasonable amount of time under § 440.2607(3).  758 F. App'x 485, 487 (6th Cir. 2019).  This case is easily distinguishable, however, because there is no evidence that Carhartt had reason to suspect that the fabric contained latent defects.

have to perform destructive, fire-resistance testing on the fabric Carhartt purchased, and that is not what *Bev Smith* set forth.  While hiring an expert may have been a reasonable course of action for an individual buying a car, the same cannot be true for manufacturers who receive thousands of shipments of distinct products each day.  Under Innovative's reading of *Bev Smith*, manufacturers would have to implement a vigorous testing program for all of their products and any potential latent defects those products might have, regardless of the agreement's terms.  We find no support for this position in Michigan law.  Accordingly, we decline to extend *Bev Smith*'s reasoning to require expert testing for latent defects.

Next, Innovative argues that the e-mails in which Carhartt stated that it would perform "regular, random testing" on the product it received from Innovative establishes as a matter of law, that a reasonable trier of fact could only conclude that Carhartt did not notify Innovative of the breach within a reasonable time after it should have discovered the defect.  But these e-mails only state that Carhartt would perform testing; Carhartt did not specify that it would conduct destructive, flame-resistance testing.

Regardless, the e-mails cannot be read to "vary the terms of a contract which is clear and unambiguous."  *Frederick L. Kubik Revocable Tr. dated 12/16/00 v. Home Apartments, LLC*, No. 332958, 2017 WL 6502672, at *5 (Mich. Ct. App. Dec. 19, 2017) (quoting *Hamade v. Sunoco Inc.*, 721 N.W.2d 233, 247 (Mich. Ct. App. 2006)).  And Carhartt's and Innovative's Terms and Conditions are clear and unambiguous that testing shall be performed by Innovative.  R. 151-11, PageID 6428 ("[A]ll goods and services . . . manufactured or assembled by Vendor . . . shall have been tested to and comply at all times with the specifications provided by Carhartt.").

Nonetheless, while the e-mails certainly might be relevant evidence to determine whether Carhartt notified Innovative of the breach within a reasonable time, they are not dispositive.  Again, this is a question for a jury.

* * *

As a federal court sitting in diversity, we must take care before extending state law beyond its borders.  *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) (noting that

federal courts sitting in diversity must be cautious in "adopting 'substantive innovation' in state law." (quoting *Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. Unit A 1980))).  We hesitate to say what is reasonable under the Michigan UCC with only one indication, *Bev Smith*, of where those borders lie.

## III.

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** for a jury to decide whether Carhartt notified Innovative of the alleged breach within a reasonable time after it should have discovered the fabric defect.